625 A.2d 1252

**Steven V. EVERETT, Appellant**

v.

**Lori Yvonne ANGLEMEYER and Jeffrey Anglemeyer.**

Superior Court of Pennsylvania.

Argued March 31, 1993.

Filed May 28, 1993.

Nicholas R. Sabatine, III, Wind Gap, for appellant.

Before TAMILIA, POPOVICH and CERCONE, JJ.

TAMILIA, Judge:

This is an appeal from the Order of August 18, 1992. Despite the muddled procedural and factual history of this case, the issues posed herein are capable of proper resolution by this Court.

On March 28, 1991, appellant, Steven V. Everett, filed a complaint in custody against appellees, Lori Yvonne Anglemeyer and Jeffrey Anglemeyer, seeking custody of the minor child, Dylan Victor Everett, born August 23, 1990. On May 3, 1991, following a conference before a special Master, an Order was entered granting Steven partial custody of Dylan for purposes of visitation, without prejudice to the rights of Jeffrey. On June 25, 1991, Steven filed a petition for contempt, alleging that Lori had denied him visitation with Dylan. Lori filed a counter-petition to terminate the custody Order on July 3, 1991. On January 31, 1992, Steven filed a petition to establish paternity. A hearing was held on the matter on February 26, 1992, before the Honorable Robert E. Simpson, Jr. Although not raised before Judge Simpson, in Steven's brief in support of his petition to establish paternity he argued it is necessary to order a blood test to determine whether he is the natural father of Dylan. The case was assigned to the Honorable James C. Hogan on April 27, 1992.

We adopt the following portion of the Opinion of the trial court:

The following are agreed facts recited from plaintiff's brief. On or about November 23, 1989, Plaintiff Everett and Defendant Lori Anglemeyer, (hereafter Lori) engaged in sexual intercourse which resulted in the conception of the minor child Dylan V. Everett. At that time, Lori was married to defendant Jeffrey Anglemeyer. On or about March 1, 1990, defendants separated, and Lori began cohabitating with plaintiff. On March 27, 1990, defendants, Lori and Jeffrey Anglemeyer, were divorced by order of this court. On August 23, 1990, the minor child was born. Plaintiff and Lori caused plaintiff to be identified as the biological father on the child's birth certificate.

All parties agree that from the date of the child's birth until on or about January 2, 1991, Lori and the child resided with plaintiff, who financially supported both.

On or about November 13, 1990, while Lori acknowledges now that she was living with plaintiff Everett, and being supported by him, this court on record made in DR # 81686,

per the Honorable President Judge Robert A. Freedberg, entered an order of support against Jeffrey Anglemeyer for support of Lori, Monica Lynn Anglemeyer, and Dylan V. Everett.

On or about November 20, 1990, Lori signed a statement objecting to the November 13, 1990 support order, and declared that plaintiff is the natural father of her child, Dylan. On or about January 10, 1991, Lori signed a statement retracting her signed statement of November 20, 1990, and reclaimed Jeffrey Anglemeyer as the father of her natural child, Dylan. Also on January 10, 1991, this court accepted Jeffrey Anglemeyer's **"Acknowledgement of Paternity—Waiver of Trial"**, in which he acknowledged paternity of the child Dylan V. Everett. This signed statement was made by Jeffrey Anglemeyer under oath, subject to the penalties of 18 Pa.C.S.A. 4904 relating to unsworn falsification to authorities. The parties have agreed and we take judicial notice of judgments and record proceedings in DR No. 81686. (See Conference with Judge Simpson, 2/26/92).

(Slip Op., Hogan, J., 8/18/92, pp. 2–3.)

By Order of the same date, the trial court entered an Order denying Steven's petition to establish paternity, vacating the May 3, 1991 visitation Order, granting Lori's petition to terminate visitation and dismissing Steven's complaint for visitation rights. This appeal followed.[1]

On appeal, Steven argues the trial court erred in: (1) finding Jeffrey the legal father of Dylan based on the Order of support entered against Jeffrey; (2) finding Steven is collaterally estopped from raising the issue of paternity in this proceeding; and (3) entering the Order of August 18, 1992, notwithstanding the prior Order of May 3, 1991 and the facts found by the court.

Appellant first argues that the trial court found, and all parties agree, that appellant is Dylan's biological father. Although the trial court initially stated in its Opinion that Steven

---

1. Neither Lori nor Jeffrey has filed a brief for our review.

and Lori "engaged in sexual intercourse which resulted in the conception of the minor child Dylan V. Everett," the trial court made no such identification at any other point in its decision, and in fact its decision was based on other factors. In addition, the trial court noted Lori had retracted her declaration that Steven was the natural father of Dylan and had signed a statement that Jeffrey was Dylan's natural father. Further, the court took judicial notice of Jeffrey's sworn acknowledgement of paternity, made pursuant to the penalties for perjury and unsworn falsification to authorities. 18 Pa.C.S. § 4904; Pa.R.C.P. 1910.28.

■ Irrespective of the disputed facts of this case, the inconsistencies in Lori's statements, conduct and actions concerning the paternity of Dylan, and appellant's arguments to the contrary on appeal, this Court finds its way illuminated by precedent and public policy. A child support Order was entered for Dylan and against Jeffrey on November 13, 1990. We have stated on several occasions that an Order for child support, from which no appeal is taken, necessarily determines the issue of paternity. *B.O. v. C.O.*, 404 Pa.Super. 127, 590 A.2d 313 (1991); *Gardner v. Gardner*, 371 Pa.Super. 256, 538 A.2d 4 (1988); *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987); *Shindel v. Leedom*, 350 Pa.Super. 274, 504 A.2d 353 (1986). To this extent, we find no error by the trial court.

The trial court also found, based on Jeffrey's failure to appeal the entry of the support Order, that the parties are now collaterally estopped from raising the issue of paternity. *Gulla v. Fitzpatrick*, 408 Pa.Super. 269, 596 A.2d 851 (1991). Steven argues, however, that the doctrine of collateral estoppel does not preclude him from litigating this issue since he was not a party to the support action.

It must be noted Steven and Lori were residing together at the time of the entry of the support Order against Jeffrey, yet Steven did not petition to intervene in the support action in order to assert his putative parental rights, despite presumptive notice that those rights were questioned. Pa.R.C.P. 2327(4). It further should be noted that in *Gulla, supra,* this Court found the parties *equitably* estopped, rather than collat-

erally estopped, from questioning paternity. *Id.* at 271–272, 596 A.2d at 852.

> As applied in paternity actions, the doctrine [of collateral estoppel] provides that where a woman secures a child support order against a man, the entry of that order necessarily includes a judicial determination of paternity. Equitable estoppel, on the other hand, refers to estoppel created by a party's conduct and has nothing to do with a prior judicial determination. Thus, while [the mother] may not be collaterally estopped by the existence of the support order, the fact that she sought and obtained the order and accepted payments under it is certainly one factor relevant to equitable estoppel.

*Id.* at 282, 596 A.2d at 857 n. 2. The *Gulla* Court went on to state that "principles of estoppel are peculiarly suited to cases where the child was conceived out of wedlock and no presumptions regarding paternity apply." *Id.* at 283, 596 A.2d at 858; *see also Scott v. Mershon,* 394 Pa.Super. 411, 418–19, 576 A.2d, 67, 71 (1990).

If Dylan were born out of wedlock, as Steven argues, and no presumption existed regarding paternity, this case could be resolved on the basis of estoppel principles alone, for if Lori is equitably estopped from disputing Jeffrey's paternity, and Jeffrey is collaterally estopped from disputing his paternity, what right is left to Steven? We need not reach our decision on that basis, however, inasmuch as Steven has not overcome the time-honored presumption in favor of legitimacy.

A host of recent decisions have maintained that the presumption that a child born to a married woman is a child of the marriage, and therefore of the woman's husband, is one of the strongest presumptions known to the common law. *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990), *cert. den.,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Coco v. Vandergrift,* 416 Pa.Super. 444, 611 A.2d 299 (1992); *McCue v. McCue,* 413 Pa.Super. 71, 604 A.2d 738 (1992); *Donnelly v. Lindenmuth,* 409 Pa.Super. 341, 597 A.2d 1234 (1991); *Jones v. Trojak,* 402 Pa.Super. 61, 586 A.2d 397 (1990), *app. granted,* 527 Pa. 673, 594 A.2d 658 (1991); *Scott, supra.* The presump-

tion can be overcome only by clear and convincing evidence that a husband was incapable of procreation or had no access to his wife during the relevant period. *McCue, supra,* at 75, 604 A.2d at 740. Moreover, "the presumption of legitimacy is always the starting point in a contest involving the parentage of a child born during coverture." *Id.*

In this case, conception of Dylan occurred on or about November 23, 1989, at a time when Lori and Jeffrey were married and living together. They separated on or about March 1, 1990, and were divorced on March 27, 1990. Dylan was born on August 23, 1990. Despite the fact Lori and Jeffrey were divorced before Dylan was born, we find the presumption still exists that Dylan is the child of the marriage. We view any semantic argument to the contrary an exercise in "heir-splitting." Since Steven has failed to offer *any* evidence that Jeffrey was incapable of procreation or had no access to Lori at the time of conception, we find the trial court did not err in refusing to compel the parties to submit to blood tests to determine paternity. 23 Pa.C.S. § 5104.

Based on the record before us, we find the trial court correctly denied Steven's petition to establish paternity. We recognize a visitation Order was entered by the trial court in favor of Steven on May 3, 1991, and that Steven is listed on Dylan's birth certificate as the natural father. Nevertheless, this is not the only evidence in this case, and it is far from dispositive, especially where Lori "has frequently equivocated concerning identity of the natural father" (Slip Op. at 5), and her most recent averment is that Dylan was conceived during a period of reunification with Jeffrey. She also has averred she listed Steven as Dylan's father solely because of his threats and intimidation. What is clear is that Jeffrey has never denied paternity of Dylan. "[E]ven in modern times— when ... the rigid protection of the marital family has in other respects been relaxed—the ability of a person [outside the marriage] to claim paternity has not been generally acknowledged." *Michael H. v. Gerald D.,* 491 U.S. 110, 125, 109 S.Ct. 2333, 2343, 105 L.Ed.2d 91, 107 (1989).

We also recognize this case does not present a situation wherein the parties' marriage is continuing and the family unit is sought to be preserved. In those situations, our Supreme Court in *John M., supra,* "emphasized the fact that [the] Commonwealth's interests in the stability of the intact family outweighed the interests of the alleged father in establishing his paternity." *Coco, supra,* at 449–450, 611 A.2d at 301. Here, while married to Jeffrey, Lori engaged in an extramarital relationship with Steven. She also resided with Steven for a period of approximately ten months after she separated from, and subsequently divorced, Jeffrey. Although from the limited record before us, of which the last hearing took place more than a year ago, it does not appear Jeffrey and Lori have reconciled; it also does not appear Lori and Steven have reunited. As a consequence, we see no societal/family interest to preserve.

We are mindful still, however, of our paramount responsibility, which is to ensure Dylan's best interests. Dylan only spent the first four months of his life living with his mother and Steven. Since that time, Lori has repudiated any parental interest of Steven's, denied his paternity and voiced concerns over Steven's threats, intimidation and reputation for violence. While we do not necessarily accept the veracity of these concerns, they evidence that Lori, Dylan's dominant parental presence, desires no contact with Steven. Dylan's best interests would not be served by forcing such contact, especially where Lori, Jeffrey and the law view Jeffrey as Dylan's father.

For all of the foregoing reasons, we find no error by the trial court, and we affirm the Order of August 18, 1992.

Order affirmed.