688 A.2d 726

**Elizabeth O. MISCOVICH**

v.

**Gerald Allan MISCOVICH, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1996.

Filed Jan. 10, 1997.

438

Neil Hurowitz, Philadelphia, for appellant.

Lisa A. Waldman, Reading, for appellee.

Before CIRILLO, P.J.E., and SAYLOR and HOFFMAN, JJ.

CIRILLO, P.J.E.:

In this paternity action, appellant Gerald Allan Miscovich appeals from a final decree of the Court of Common Pleas of Berks County, denying appellant's request for admission of DNA results and/or blood testing and releasing funds in escrow for payment of child support. We affirm.

The parties were married on July 16, 1986. On December 28, 1987, appellee Elizabeth O. Miscovitch gave birth to a son. Within two years, in October of 1989, the parties separated. On March 9, 1990, the parties signed a property settlement agreement, which included terms for payment of child support. The parties were divorced on December 12, 1990. At no time during the separation or divorce proceedings did Gerald question his paternity.

Two years later, in January of 1992, Gerald became suspicious of his paternity.[1] Gerald submitted himself and the child to DNA analysis. The analysis excluded Gerald as the child's father. In March of 1992, Gerald ceased all contact with the child and informed the child that he was not his father. The child, at that time, was four years old.

When Elizabeth was confronted with the DNA test results, she filed a support action against a third party on behalf of her son. At that time, Elizabeth was receiving Public Assistance. She was also attending a post-secondary education program.

In the support action, the trial court refused to order blood testing and refused to admit evidence of DNA analysis into trial. The court applied the presumption that a child born to a married woman is a child of the marriage. The court also determined that because appellant had failed to present clear and convincing evidence of non-access, sterility or impotency, the presumption could not be overcome. *See John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380, *cert. denied*, 498 U.S.

1. Appellant explains that his suspicion was based on the fact that he and his wife both had blue eyes, and his child had brown eyes.

850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Paulshock v. Bonomo,* 443 Pa.Super. 409, 661 A.2d 1386 (1995).

On appeal, Gerald raises the following issues:

1. Whether the trial court erred in finding that the presumption of paternity applied where there is not an intact family, the mother has filed for support against a third party, and there has been no contact with the child since 1992?

2. Whether the trial court erred in ignoring the plain language of the blood testing statute by refusing to order testing to rebut the presumption of paternity?

3. Whether the trial court erred in applying [sic] the doctrine of estoppel despite the fact that the mother fraudulently concealed the issue of non-paternity and the appellant ceased any contact with the child immediately upon learning that he was not the father?

4. Whether the trial court erred in failing to hold a hearing on the application of the presumption of paternity and the appellant's request for paternity testing?

The presumption that a child born during a marriage is a child of the marriage

arose from the reluctance of the law to declare a child "illegitimate," because the status "illegitimate" historically subjected a child to significant legal and social discrimination. [citations omitted].[2].

*John M.,* 524 Pa. at 312 n. 2, 571 A.2d at 1383 n. 2. In Pennsylvania, the General Assembly has eliminated the legal

**2.** Throughout history, illegitimate children were precluded from, among other legal rights, entering certain professions. The Book of Deuteronomy states:

a bastard shall not enter into the congregation of the Lord; even to this tenth generation shall he not enter into the congregation of the Lord.

Duet. 23:2.

At common law, a child born out of wetlock, referred to as a bastard, was considered a non-person and was not entitled to support from the father or inheritance from either parent. 1 W. Blackstone, Commentaries 459; *Davis v. Houston,* 2 Yeates 280 (1878).

*Kohler v. Bleem,* 439 Pa.Super. 385, 390 n.1, 654 A.2d 569, 572 n.1.

distinction (and discrimination) between "legitimate" and "illegitimate" children. The General Assembly has declared all children to be legitimate:

> All children shall be legitimate irrespective of the marital status of their parents, and in every case where children are born out of wedlock, they shall enjoy all the rights and privileges as if they had been born during the wedlock of their parents except as otherwise provided in Title 20 (relating to decedents, estates and fiduciaries).

23 Pa.C.S. § 5102(a).[3]

 The strength of the presumption that a child born to a married woman is a child of the marriage, is grounded in the Commonwealth's interest in protecting the family unit. *See Commonwealth ex rel. O'Brien v. O'Brien,* 390 Pa. 551, 136 A.2d 451 (1957); *see also John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Coco v. Vandergrift,* 416 Pa.Super. 444, 611 A.2d 299 (1992); *McCue v. McCue,* 413 Pa.Super. 71, 604 A.2d 738 (1992); *Donnelly v. Lindenmuth,* 409 Pa.Super. 341, 597 A.2d 1234 (1991). In *John M., supra,* our supreme court reaffirmed the force of this presumption, labeling it "one of the strongest presumptions known to law." *Id.* at 312–13, 571 A.2d at 1383 (citing *Cairgle v. American Radiator & S.S. Corp.,* 366 Pa. 249, 77 A.2d 439 (1951)). Although the presumption is rebuttable, one who attempts to overcome it bears a heavy burden. *See Jones, supra; see also Selm v. Elliott,* 411 Pa.Super. 602, 603–05, 602 A.2d 358, 359 (1992).

 Traditionally, the presumption could be overcome only by proof that the husband did not have access to his wife during the period of possible conception, or by proof of the husband's impotency or sterility. *See John M.,* 524 Pa. at 313–15, 571 A.2d at 1384; *see also Commonwealth ex rel. O'Brien v. O'Brien,* 390 Pa. 551, 136 A.2d 451 (1957)(the

---

**3.** The Pennsylvania Supreme Court announced, in *John M., supra,* that it would no longer "use the phrase 'presumption of legitimacy' to describe the 'presumption that a child born to a married woman is a child of the marriage,' and therefore of the woman's husband." *John M.,* 524 Pa. at 312 n. 2, 571 A.2d at 1384 n. 2.

presumption of legitimacy can be overcome only by proof that the husband did not have access to his wife during the period of possible conception, or by proof of the husband's impotency or sterility); *Kohler v. Bleem,* 439 Pa.Super. 385, 654 A.2d 569, *appeal denied,* 541 Pa. 652, 664 A.2d 541 (1995) (clear and convincing evidence of husband's vasectomy and subsequent lack of spermatozoa in his semen rebutted the presumption that child born during marriage was child of the marriage).

> At common law a child born of a married woman was conclusively presumed to be legitimate unless her husband was not within the four seas which bounded the kingdom, but later it was held that the presumption of legitimacy could be overcome if the husband and wife lived at a distance from each other so that access was very improbable. This was the rule applied in Pennsylvania in 1814. *Commonwealth v. Shepherd,* 6 Binney 283, 286.

*Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 282–84, 184 A.2d 351, 355 (1962). The evidence offered to rebut the presumption must be clear and convincing. *See McCue v. McCue,* 413 Pa.Super. 71, 604 A.2d 738, *appeal denied,* 531 Pa. 655, 613 A.2d 560 (1992). Additionally, the presumption is overcome if "the court finds that the conclusions of all the experts as disclosed by the evidence based upon the [blood] tests show that the husband is not the father of the child." 23 Pa.C.S.A. § 5104(g).[4]

Before us, then, is the interplay between the presumption of paternity and the interpretation of the Uniform Act on Blood Tests to Determine Paternity. *See* 23 Pa.C.S.A. § 5104. Also before us, as it relates to our interpreting of the Act, is the viability of the presumption of paternity. *Cf. John M. v.*

---

4. In *Jones v. Trojak,* 535 Pa. 95, 634 A.2d 201 (1993), our supreme court stated that a court "may order blood tests to determine paternity only when the presumption of paternity has been overcome." *Id.* at 105, 634 A.2d at 206, (citing *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380, *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990)). As we noted in *Kohler, supra,* the statute is somewhat anomalous in light of our supreme court's pronouncement in *Jones, supra. See Kohler,* 439 Pa.Super. at 392 n. 4, 654 A.2d at 573 n. 4.

*Paula T.*, 377 Pa.Super. 72, 546 A.2d 1162 (1988), *reversed on other grounds*, 524 Pa. 306, 571 A.2d 1380, *cert. denied*, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). We attempt to impose an order on these concepts in light of the various factual permutations which arise in paternity cases. The rules differ for each scenario.

▇ Our first inquiry is whether the child was born during or out of wedlock. The applicable principles differ depending upon the child's status in this respect. If a child is born out of wedlock, the presumption, obviously, is inapplicable. The determination of paternity, then, turns on the application of the estoppel principles to the particular facts of the case. *See In the Matter of Naja Green*, 437 Pa.Super. 606, 650 A.2d 1072 (1994); *Jefferson v. Perry*, 432 Pa.Super. 651, 639 A.2d 830 (1994); *cf. Everett v. Anglemeyer*, 425 Pa.Super. 587, 625 A.2d 1252 (1993). *See also* 23 Pa.C.S.A. § 5102(b).[5] If paternity has been established by estoppel, blood tests and evidence to rebut the presumption of paternity are irrelevant. *See Jones, supra; John M., supra; Gulla v. Fitzpatrick*, 408 Pa.Super. 269, 596 A.2d 851 (1991); *see also Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529 (1995)(where estoppel is applied, blood test may be irrelevant because the law will not permit a person in estoppel situation to challenge the status previously accepted; only when estoppel is inapplicable will blood tests be ordered).[6]

**5.** As stated above, the General Assembly has codified the principle of paternity by estoppel in cases of children born out of wedlock. 23 Pa.C.S.A. § 5102(b). The relevant section provides:

(b) For purposes of prescribed benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:

\* \* \* \* \* \*

(2) If during the lifetime of the child, the father openly holds out the child to be his own and receives the child into his home, or openly holds out the child to be his and provides support for the child which shall be determined by clear and convincing evidence.

23 Pa.C.S.A. § 5102(b).

**6.** We note that where the paternity of a child born out of wedlock is disputed, the court, upon the request of any party to an action to establish paternity, "shall require the child and the parties to submit to

■ With respect to a child born during wedlock, if the presumption of paternity has *not* been rebutted with clear and convincing evidence, as the trial court determined in this case, *blood tests may not be ordered. See Jones, supra; John M., supra. Cf.* 23 Pa.C.S.A. § 5104(g)("The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child."). Where the presumption of a husband's paternity has not been overcome, blood tests are not a relevant fact. *See Jones, supra; John M., supra. See also Selm v. Elliott,* 411 Pa.Super. 602, 602 A.2d 358 (1992)(paternity becomes a relevant fact in an action against a putative father only when the presumption against the presumptive father has been overcome); *Paulshock v. Bonomo,* 443 Pa.Super. 409, 661 A.2d 1386 (1995)(blood tests are irrelevant where the presumption of a husband's paternity has not been overcome).

If the presumption of paternity has been rebutted by clear and convincing evidence, paternity becomes a relevant fact and blood tests *may* be ordered. *Selm, supra.* Even then, however, the right to blood tests is not absolute. Following rebuttal of the presumption that a child born during the marriage is a child of the husband, a party's right to a blood test must be balanced against competing societal or family interests. *See McCue, supra; Donnelly v. Lindenmuth,* 409 Pa.Super. 341, 344, 597 A.2d 1234, 1235 (1991); *see also Woy v. Woy,* 444 Pa.Super. 232, 234– 35, 663 A.2d 759, 760 (1995)("when a wife engages in sexual relations with a man, not her husband, during intermittent separations from her husband, a child born to her enjoys the 'presumption of legitimacy' absent clear and convincing proof of the husband's inability to procreate or lack of access to his wife at the time of conception.").

■ Finally, the presumption is irrefutable where the mother, child and husband live together as an intact family, with

genetic tests." 23 Pa.C.S.A. § 4343(a); 23 Pa.C.S.A. § 4343(c) (1996 supp.).

the husband assuming parental responsibility. The conclusive nature of the presumption exists in this scenario even if a third party claims the husband's sterility or non-access. *See John M., supra; Jones, supra.*

Our society has embarked upon an era in which the usefulness of the presumption of legitimacy as a legal tool must be questioned. Overcoming the presumption is fast becoming virtually impossible. Advancements in technology, in all its forms, medicine to air travel, have muddled clear and convincing rebuttal, altering the substance of the presumption. The level of difficulty of rebuttal is raised, purely by advancements in technology, and the legislature and our courts must make necessary adjustments in the law. It becomes necessary, then, to revisit the policies underlying the presumption, and insure that the equilibrium has not been shifted to a point of inequity.

In keeping with this principle, it is suggested that the protection of the traditional family unit need not be dictated by the presumption. We need not blindly apply it, nor cling to timeworn principles to support the Commonwealth's goal of protecting the family. A careful analysis of each factual scenario, in particular the relationship between the presumptive or putative father and child, *see Gulla, supra,* as well as the "known factor" of a putative father against whom a support claim may be made, is necessary to fair and just application of paternity law.

A review of recent decisions in the courts of this Commonwealth bear this out. In addition to application of the presumption and analysis of whether it has been rebutted, recent decisions in the courts of this Commonwealth have considered whether the purpose of the presumption is served under the particular facts of the case. *See, e.g., Jones,* 535 Pa. at 106–07, 634 A.2d at 207 "we agree with the Superior Court that there being no intact family considerations present, a determination regarding Trojak's [putative father's] paternity is necessary to resolve the child support claim made by Jones [mother]."; *Kohler v. Bleem,* 439 Pa.Super. at 397–401, 654 A.2d at 576–77 (in addition to consideration of evidence rebutting the pre-

sumption of paternity, the court considered the fact that there was no longer an intact family, the fact that the child referred to putative father as "my dad," and the fact that mother had misrepresented the paternity of the child to her husband, which blocked application of paternity by estoppel doctrine); *Dettinger v. McCleary*, 438 Pa.Super. 300, 302–04, 652 A.2d 383, 385 (1994) ("critical to a resolution of any paternity claim is a determination of the relationship of the parties based upon the facts."). In essence, the decisions lean toward blending estoppel doctrine and other factors, in particular, intact family considerations and the relationship of the "father" and child. *Cf. Gulla*, 408 Pa.Super. at 279–80, 596 A.2d at 856 (emphasizing that the proper focus is on the relationship between father and child).

In *Jones v. Trojak*, our supreme court blended the principles of paternity by estoppel with the presumption that a child born to a married woman is the child of the marriage. There, the mother brought a support action against the putative father, Joseph Trojak. At the time the child was born, the mother was married to and living with William Jones. The trial court ordered blood tests. At trial, Trojak objected to the admission of the tests. The Pennsylvania Supreme Court stated:

> [U]nder certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child. . . . In this case, however, we agree with the trial court and are convinced that the facts indicate that the presumptive father and mother repudiated their marriage vows long ago. Additionally, we have evidence that the presumptive father did not accept the child as his own. The circumstances before us, as found by the trial court, are that the presumptive father has never financially or emotionally supported Katie. . . . Thus, we agree with the Superior Court that there being no intact family considerations present, a determination regarding Trojak's [the putative father]

paternity is necessary to resolve the child support claim made by Jones.

535 Pa. at 105–06, 634 A.2d at 206–207.

In *Kohler v. Bleem*, the trial court determined that clear and convincing evidence of the presumptive father's sterility rebutted the presumption of paternity. Notwithstanding this determination, the trial court applied the doctrine of paternity by estoppel. The court believed it was compelled to do so because of the presumptive father's actions in embracing the child as his own during the early years of the child's life. *Kohler v. Bleem*, 439 Pa.Super. at 391–92, 654 A.2d at 573. This court reversed, finding that the doctrine could not be applied to the facts presented in that case. We stated:

> What the trial court neglected to consider, however, is the role of estoppel principles in a factual situation such as this, that is, one involving fraud and misrepresentation and the absence of an intact family. The confusion in this case arises from the fact that Mr. Kohler did accept Leslie as his daughter, knowing that she was not his child. This brings into play the paternity by estoppel doctrine. Mr. Kohler, however, was operating under the misrepresentation that an "unknown" man had fathered the child. But for this fact, Mr. Kohler indicated that he would have left his wife immediately. In fact, Mr. Kohler did so when he was told that Mr. Bleem [the Kohlers' next-door neighbor] was Leslie's natural father.

*Id.* at 399, 654 A.2d at 576.

In *Dettinger v. McCleary, supra,* the putative father, Mark Dettinger, attempted to call into question the paternity of the child at issue and the family relationship of the mother, Cheryl McCleary, the father, Michael McCleary, and the child. The child was born at a time when mother was married to Dettinger. In remanding this case due to premature dismissal, this court stated:

> The trial court was unable to determine, based upon the posture of the case, whether husband [McCleary] ever

assumed a parental role concerning this child causing a family bond to develop, or whether Appellant [Dettinger] was acknowledged all along to be the father of the child. If, as [Dettinger] alleges, such disruption existed in the relationship so that a family unit was never established, then there are no family interests to preserve.... If upon receipt of testimony the court concludes that mother, husband and the child exist as a family, or that they once did so, allowing a parent-child bond to develop, the presumption will stand. If[,] however[,] the court concludes, as in *Jones,* that there is no "family unit" to protect because a familial relationship was never created or because the parties acknowledged [Dettinger's] role as father to the child, then [Dettinger] is to be permitted to offer evidence of paternity [blood tests]. In the latter instance, the purpose for the presumption no longer exists.

*Id.* at 304–05, 652 A.2d at 386.

As indicated by his statement of issues and argument, Gerald attempts to place this case squarely within the confines of *Kohler v. Bleem.* We acknowledge the unusual circumstances in *Kohler,* and reiterate the clarifications made in that case:

[I]f the matter involves a child born out of wedlock, no presumptions apply and the determination will turn on application of estoppel principles to the particular facts of the case. *See In the Matter of Naja Green,* 437 Pa.Super. 606, 650 A.2d 1072 (1994); *Jefferson [v. Perry,* 432 Pa.Super. 651, 639 A.2d 830 (1994)]; *Everett [v. Anglemeyer,* 425 Pa.Super. 587, 625 A.2d 1252 (1993)]. *See also* 23 Pa.C.S.A. § 5102(b). Second, **if the matter involves a child born during wedlock, the presumption automatically applies but may be rebutted by clear and convincing evidence of non-access or impotency/sterility.** [*Commonwealth ex rel. Goldman v.] Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962) ... Additionally, application of estoppel principles may be employed to determine whether the presumption

may be rebutted. If estoppel principles are applicable, the presumption will generally prevail.

*Id.* at 393–95, 654 A.2d at 574 (emphasis added).

█ Contrary to Gerald's contention, we do not find that this case fits within the narrow confines of *Kohler, supra.* We acknowledge that the strength of the presumption has been relaxed by additional considerations; however, those unique considerations are not present here. Rather, we find that the facts of this case are more closely analogous to those in *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962). There, the parties, husband and wife, had three children. Pending a divorce action, wife sought support from husband for the three children. Husband filed a petition denying paternity and requested that the court order blood tests. The court granted the request, and wife appealed. This court, discussing the applicability of the blood testing statute, stated:

> We recognize that there is something disgusting about a husband who, moved by bitterness toward his wife, suddenly questions the legitimacy of her child whom he had been accepting and recognizing as his own.... Where the husband has accepted his wife's child and held it out as his own over a period of time, he is estopped from denying paternity.

*Goldman,* 199 Pa.Super. at 282–83, 184 A.2d at 355.

Here, the trial court refused Gerald's request for blood testing because it determined that the presumption of paternity had not been overcome. The trial court found that the evidence presented did not clearly and convincingly establish non-access, sterility, or impotency. In *Kohler,* unlike here, the presumption had been rebutted by evidence of the husband's sterility; despite the fact that the paternity by estoppel principles could be applied to preclude husband from denying paternity, this court found other considerations significant, including the mother's subterfuge, which prompted this court to apply estoppel principles in favor of the husband, and the significant relationship established between the putative father

450

and the child. *Kohler,* 439 Pa.Super. at 399–401, 654 A.2d at 577.

Here, Gerald clearly had an established relationship with his son. Like in *Goldman,* he did not question it until after the relationship between him and his wife deteriorated. Although the family is not now intact, *cf. Kohler, supra,* a familial relationship existed at the time the child was born and, more significantly, a parent-child bond was formed. Despite Gerald's unilateral termination of this relationship and his decision to notify the child that he was not his father, we find that a considered application of the myriad factors involved to the facts of this case warrant a finding that the relationship still exists at law. Gerald has offered no evidence of non-access, sterility or impotency. *Paulshock, supra.* Significantly, Gerald offers no evidence, other than his hunch of non-paternity based on eye color, that a relationship has been forged with a putative father or that estoppel principles are applicable in his favor, thus blocking application of the doctrine of paternity by estoppel. *Kohler, supra.*

We conclude, therefore, that the trial court properly concluded that the presumption of paternity had not been rebutted by clear and convincing evidence, and, as such, properly denied Gerald's request for blood tests.

Order affirmed.