Melissa A. GREEN, Appellant,

v.

Timothy A. GOOD, Appellee.

Superior Court of Pennsylvania.

Submitted Aug. 4, 1997.
Filed Jan. 29, 1998.

Dudley N. Anderson, Williamsport, for appellant.

Joseph K. Cottrell, Asst. Public Defender, Williamsport, for appellee.

Before DEL SOLE, TAMILIA and OLSZEWSKI, JJ.

DEL SOLE, Judge:

This appeal is from an order dismissing a complaint for support under URESA. We reverse the order and remand for further proceedings.

Appellant Melissa A. Green is the natural mother of Brittany, who was born on December 28, 1991. Brittany was two months premature, having been conceived in May of 1991. Melissa was at that time married to Michael Green and living in Norfolk, Virginia. Michael was serving in the Navy and went on a six-month tour at sea beginning sometime in January 1991. While Michael was away, Melissa became involved in a sexual relationship with Appellee Timothy A. Good. During the month of May 1991, Michael returned home unexpectedly and found Melissa and Good at the home together. Two weeks later, Melissa moved out of the marital residence and temporarily moved in with a friend where Timothy also lived. From November 1991, when her relationship with Timothy ended, until February 1992, Melissa again resided with Michael because she was unable to work and had financial problems. Melissa testified that she did not have sexual relations with anyone other than Timothy during the period of conception. Melissa ultimately moved to Minnesota and Timothy moved to Pennsylvania. Melissa and Michael were divorced in Minnesota. The court there made a specific finding of fact that Michael is not the father of Brittany. Melissa brought this complaint for support against Timothy under the Uniform Reciprocal Enforcement of Support Act, 23 Pa. C.S.A. §§ 7101–7802, which was then forwarded to Lycoming County, Pennsylvania. The trial court determined that the presumption that a child born to a married woman is a child of the marriage and therefore of the husband was not rebutted and dismissed the complaint.

Our supreme court recently reanalyzed both the presumption of paternity and the doctrine of estoppel in a similar situation. In *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997), Lisa Brinkley was married to George Brinkley when Lisa's daughter was conceived. Mrs. Brinkley testified that she slept in the bedroom and her husband slept on the couch and they did not have sexual relations. She also testified that she was having sexual relations with Richard King during the period when her daughter was conceived. Both the trial court and this court held that Mrs. Brinkley had not rebutted the presumption of paternity. In the Opinion Announcing the Judgment of the Court, Mr. Chief Justice Flaherty, joined by Mr. Justice Cappy, noted that the court's legal analysis is two-fold: the court first must consider whether the presumption of paternity applies, if it does, has it been rebutted. Second, where the presumption has been rebutted or is inapplicable, the court must determine whether estoppel applies. However, the presumption of paternity is not to be blindly applied to all cases in which the husband and wife were married at the time. Rather, the presumption is to be applied only where the policy which underlies the presumption would be advanced by its application. The public policy in support of the presumption is the preservation of the marriage, i.e., that a marriage which functions as a family unit should not be destroyed by a dispute over the parentage of children conceived or born during the marriage. Thus, because wife and husband separated before the child was born and were divorced at the time of the complaint, there was no marriage to preserve and the presumption was not applicable. Madame Justice Newman, joined by Mr. Justice Castille, agreed with the Chief Justice's determination that the presumption "does not apply where its purpose is not served." *Id.* at ——, 701 A.2d at 185. Their disagreement with Chief Justice Flaherty's opinion related to the means of rebutting the presumption not on when the presumption should be applied. Thus, four justices, a clear majority, agreed that the presumption should not be applied where there is no intact marital unit to protect.[1]

1. The remaining justices also agreed with the result but for different reasons. Mr. Justice Zap-

Applying the rationale of *Brinkley, supra*, to the facts of the present case yields the conclusion that the presumption that Michael is the father of Melissa's child does not apply. At the time of the child's birth, Melissa and Michael were separated and they were divorced at the time the support complaint was filed. The divorce decree stated that Michael was not Brittany's father. Moreover, Michael has had no contact with Brittany and is not named on her birth certificate. Thus, under the Brinkley majority analysis, there is no marital unit to preserve so the presumption of paternity does not apply. Further, the record demonstrates that paternity by estoppel is not present in this case.

Therefore, we conclude that the trial court erred in failing to order appropriate scientific testing.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

OLSZEWSKI, J., joins and files a concurring opinion.

TAMILIA, J., files a concurring opinion.

TAMILIA, Judge, concurring:

I concur in the result as I believe that in citing to Justice Zappala's Concurring Opinion in *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997), the majority has adhered to the principle that has guided us from time immemorium. I would hesitate to find that the lead Opinion by Chief Justice Flaherty has in anyway seriously changed the law as clearly enunciated by *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990).

It is absolutely certain that the Supreme Court did not abrogate the underlying precepts of the presumption of legitimacy (non-access and impotence) and it did not substitute an enlarged basis for rebutting the presumption. To assure that this was not the conclusion to be drawn from its decision, the majority restated the precepts developed in *John M., supra* (a child born to a married couple will be presumed to be the issue of the husband and it may be overcome only by establishing non-access or impotency; the interest of a third party pales in comparison to the overriding interest of the presumed father, the marital institution and the interest of the Commonwealth in the family unit). Likewise, it reaffirmed the teaching of *Jones v. Trojak*, 535 Pa. 95, 634 A.2d 201 (1993) (when mother sues a third party for support, a court may order blood tests to determine paternity only when the presumption of paternity has been overcome which is by proof of facts establishing non-access or impotency). To fix as the embodiment of the law, the continuing viability of the presumption, the Supreme Court in *Brinkley* went on to declare:

> These cases set forth the fundamentals of the law of presumptive paternity: generally, a child conceived or born during the marriage is presumed to be the child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access to the mother or the presumptive father was physically incapable of procreation at the time of conception. However, the presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage. *John M.*, 524 Pa. at 323, 571 A.2d at 1388–89.

*Brinkley, supra* at ——, 701 A.2d at 179 (footnote omitted). Moreover, at footnote nine, the Court rejected any application, as suggested by the Superior Court, for enlarging the means beyond those determined in *Paula T.* to overcome the presumption.[1]

pala found that non-access was established by Mrs. Brinkley's testimony that she and her husband did not have sexual relations at the relevant time. Mr. Justice Nigro would abolish the presumption of paternity altogether and thus agreed that it was no bar to the action against Richard King.

1. "We decline to accept Superior Court's suggestion that we expand the ways in which one can rebut the presumption of paternity. Superior Court's proposed additional factors to rebut the presumption, such as whether the putative father established a relationship with the child, are appropriate in an estoppel context, but not in a presumption of paternity context. The presumption of paternity continues to be rebutted, if at

The caution which must be used in applying *Brinkley* to extend the guiding principles applied to overcoming the presumption of paternity is reinforced by its limited precedential value. We note there are four separate Opinions in *Brinkley*, none of which commanded a majority of the Court's six members. *See Commonwealth v. Minor*, 436 Pa.Super. 35, 647 A.2d 229 (1994) (non-majority decisions of state Supreme Court are not binding on lower court).

I believe a two-part test is indicated by *Brinkley* and the great body of cases that have reviewed this issue since *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439 (1951). First, the presumption of paternity prevails in the absence of proof of non-access and/or impotency; second, if the family remains intact up to and beyond the birth of the child, despite evidence that rebuts the presumption of paternity, estoppel will apply; and in either case, blood tests are irrelevant.

This case clearly falls into the classical case of non-access by being beyond the seas as first enunciated by Lord Manfield's rule. I therefore agree with the majority's decision to reverse the Order of the trial court and remand for further proceedings.

OLSZEWSKI, Judge, concurring:

I join in the holding and rationale as set forth by the majority. I write separately only to respond to the arguments advanced by Judge Tamilia in his concurring opinion. My esteemed colleagues disagree on whether *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997), controls the issue of when the presumption of paternity is applicable. I join the majority because pre-*Brinkley* precedents establish that the presumption of paternity is inapplicable where there are no intact family considerations. Thus, regardless of whether or not *Brinkley* is controlling, the rationale offered by the majority correctly states the existing law of this Commonwealth.

In *Jones v. Trojak, supra,* the Supreme Court stated:

all, by evidence related to biology: there was no access or the presumptive father was incapable

*Trojak* cites our holding in John M. v. Paula T., *[supra,]* to buttress his position that the presumption that Katie is a child of the marriage has not been overcome. *Trojak* fails to comprehend the important distinction between our reasoning in John M. and the facts of the instant case. In John M., our rationale grew out of this Commonwealth's concern for the survival of the family unit. This Court believed that "the Superior Court, in ordering the presumptive father to submit to a blood test at the request of the putative father, over-emphasized the rights and interests of the [putative] father and minimized the rights and interests of others involved in and affected by its decision, namely the mother, [presumptive] father, the family unit and the Commonwealth." *John M.,* 524 Pa. at 316, 571 A.2d at 1385. We stated that "[t]here is in short, a family involved here ... [a] woman and a man who have married and lived together as husband and wife, giving birth to and raising four children." *Id.* at 317, 571 A.2d at 1386.

*In this case, however, we agree with the trial court and are convinced that the facts indicate that the presumptive father and mother repudiated their marriage vows long ago.* Additionally, we have evidence that the presumptive father did not accept the child as his own. The circumstances before us, as found by the trial court, are that the presumptive father has never financially or emotionally supported Katie. Moreover, the trial court found that during the time Katie was conceived, Jones was not sexually involved with the presumptive father because he was impotent, and this testimony was not rebutted by either the presumptive father or the putative father. *Thus, we agree with the Superior Court that there being no intact family considerations present, a determination regarding Trojak's paternity is necessary to resolve the child support claim made by Jones.*

*Id.* at 105–07, 634 A.2d at 206–07 (emphasis added). We have consistently interpreted this passage as establishing that the pre-

of procreation." *Brinkley v. King,* —— Pa. ——, n. 9, 701 A.2d 176, 181 n. 9 (1997).

sumption of paternity is inapplicable where there are no intact family considerations. *See Miscovich v. Miscovich,* 455 Pa.Super. 437, 688 A.2d 726, 729 (1997); *Dettinger v. McCleary,* 438 Pa.Super. 300, 652 A.2d 383, 385 (1994). This is the same rationale advanced by the *Brinkley* lead opinion that we follow today. Unlike *Brinkley,* however, *Jones* is not a plurality decision. Therefore, *Jones* is controlling.

I recognize that *Jones* held in the alternative that the presumption of paternity was overcome by evidence of impotency. *See id.* at 106–07, 634 A.2d at 207 ("Moreover, the trial court found that during the time Katie was conceived, Jones was not sexually involved with the presumptive father because he was impotent, and this testimony was not rebutted by either the presumptive father or the putative father."). Both holdings, however, are dispositive and, consequently, equally binding on this Court. *See Commonwealth ex rel. Fox v. Swing,* 409 Pa. 241, 245, 186 A.2d 24, 26 (1962) (citing *Manley v. Manley,* 193 Pa.Super. 252, 164 A.2d 113 (1960)).

Accordingly, the majority sets forth the correct rationale for resolving this appeal.