1999 PA Super 24

Stella BROADWATER, Administratrix of the Estate of Sean Michael Painter, Deceased, on Behalf of the ESTATE OF Sean Michael PAINTER, Deceased, and Stella Broadwater, an individual in her own right, Appellants

v.

Fred J. SENTNER, an individual and Edward James Deems, an individual, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 28, 1998.

Filed Feb. 1, 1999.

Reargument Denied April 1, 1999.

Gary N. Altman, Uniontown, for appellants.

James R. Schadel, Pittsburgh, for appellees.

Before FORD ELLIOTT, JOYCE, and TAMILIA, JJ.

JOYCE, J.

¶ 1 Appellant, Stella Broadwater, appeals from the order dated April 30, 1998, which granted the motion for summary judgment filed by Appellees Sentner.[1] For the following reasons, we reverse. As this is the second appeal taken in this case, we recount the relevant facts as discussed in our prior memorandum.

---

1. Although Deems is identified as a party to this action, he is not a participant in this appeal.

On September 22, 1993, Sean Michael Painter and his mother, Bridgett Renee Painter, were killed in an automobile accident. At the time of his death, Sean was 27 months' old. Bridgette was survived by another son, Randy William Painter, then age seven, and her natural parents, Stella and William Broadwater. On September 28, 1993, Bridgette's former husband, Mark William Painter, renounced any right he might have had to administer Sean's estate. The same day, Sean's maternal grandparents, the Broadwaters, were granted letters of administration on Sean's estate.

A month later, in October, 1993, Edward James Deems (Deems), claiming to be the natural father of Sean Michael Painter, filed a petition seeking to have letters of administration on Sean's estate issued to him. His attorney of record was Fred J. Sentner. This petition was denied. Soon thereafter, Sentner filed a petition on behalf of Deems to revoke the Broadwaters' letters of administration and have Deems appointed administrator of Sean's estate. The Broadwaters filed an answer to the petition. On April 7, 1994, the Broadwaters' attorney wrote to Sentner, forwarding a copy of a motion to Quash Petition for Citation to Revoke Letters of Administration. The letter to Sentner indicated that the original motion to quash would be filed unless Deems' Petition for Citation was withdrawn within fifteen calendar days.

In response, Sentner filed a motion to compel discovery resulting in the Broadwaters filing their motion to quash. On April 27, 1994, the trial court entered an order permitting discovery while, at the same time, setting June 15, 1994 as the day on which the motion to quash would be heard. Depositions of Mark Painter and Deems were taken during May 1994. On behalf of Deems, Sentner filed preliminary objections to the Broadwater[s'] motion to quash. On Friday, June 10, 1994, counsel for the Broadwaters sent Sentner a letter containing material designed to refute the position of Sentner's client, Deems. Two days before the scheduled June 15th hearing date, Deems and his counsel, Sentner, met with another attorney, Bradley M. Bassi, at Sentner's request.

At the scheduled hearing on June 15, 1994, Bassi appeared representing Deems. Sentner is not listed as having appeared or participated in the June 15th hearing. Bassi requested leave to withdraw Deems' Petition to Revoke Letters of Administration in the Estate of Sean Painter. The court directed counsel to submit his client, Deems, for examination. Under direct examination by Bassi, and in response to leading questions, Deems testified to having initiated the filing of the petition to revoke letters, to being aware that Sentner had asked Bassi to associate with him in the matter, and to his having met with Bassi for the first time two days before the hearing. Deems testified that it was his desire to withdraw the petition with prejudice and permit the Broadwaters to administer the grandson's (Sean's) estate.

Mark Williams Painter then testified as to his earlier renunciation, in favor of his other son, Randy, of any rights he might have in Sean's estate. Stella Broadwater testified to having been advised by counsel in February 1994 that any funds passing to Randy would have to be placed in a trust due to Randy's minority.

*Broadwater v. Sentner*, No. 890 Pittsburgh 1997, unpublished memorandum at 2–4, 706 A.2d 1246 (Pa.Super. filed December 30, 1997). At the conclusion of the hearing, the trial court ordered that the Petition for Citation to Revoke Letters of Administration be withdrawn with prejudice.

¶ 2 Stella Broadwater, the surviving co-executor, commenced this action alleging, *inter alia*, wrongful use of civil proceedings and naming Sentner and Deems as defendants.[2] Deems was never served with the writ of summons and in the prior appeal this Court concluded that the action against Deems had lapsed. *Broadwater, supra* at 5. Appellee Sentner subsequently filed a motion for summary judgment on December 18, 1996. The trial court granted Sentner's motion for summary judgment on the basis that

---

2. William Broadwater, co-executor of Sean's estate, died before the initiation of this action.

the underlying proceeding was not terminated in Appellants' favor. Trial Court Opinion, dated 4/11/97, at 6. The trial court did not address the issue of whether Appellees had probable cause to initiate the Petition for Citation to Revoke Letters of Administration. *Id.* Appellants appealed. Upon review of the first appeal, this Court opined that the underlying proceedings had terminated in Appellants' favor and remanded for a determination of whether Appellees had probable cause to institute the underlying action. *Broadwater, supra* at 13.

¶ 3 On remand, the trial court reviewed the record, depositions and current case law and determined that Sentner had probable cause to commence the Petition to Revoke Letters of Administration and entered an order granting Sentner's motion for summary judgment. This timely appeal followed. Appellants present the following issues for our consideration: (1) whether Appellants established material issues of fact regarding whether Sentner lacked probable cause to file to the underlying action; (2) whether the issue of probable cause should go before a jury; and (3) whether Appellants can recover for Sentner's gross negligence.[3]

¶ 4 In reviewing a trial court's granting of summary judgment, this Court may only disturb the order when the trial court erred as a matter of law or abused its discretion. *Kilgore v. City of Philadelphia*, 553 Pa. 22, ——, 717 A.2d 514, 516 (1998). Nevertheless, the scope of review is plenary and the appellate court shall apply the same standard for judgment as the trial court. *Albright v. Abington Memorial Hospital*, 548 Pa. 268, 279–280, 696 A.2d 1159, 1165 (1997). An entry of summary judgment may be granted only in cases where the right is clear and free from doubt. *Kilgore, supra.* The moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Id.* The record must be viewed in the light most favorable to the non-moving party and any doubts must be resolved in favor of the non-moving party. *Id.* We will review

Appellants' claims in accordance with these principles.

¶ 5 In an action for wrongful use of civil proceedings, the plaintiff must prove the following elements: (1) that the person taking part in the initiation, procurement or continuation of civil proceedings against another (a) acts in a grossly negligent manner or without probable cause, and (b) the proceedings have terminated in favor of the person against whom they are sought. 42 Pa.C.S.A. § 8351. *Gentzler v. Atlee*, 443 Pa.Super. 128, 660 A.2d 1378, 1380 (1995), *appeal denied*, 543 Pa. 694, 670 A.2d 142 (1995).

 ¶ 6 As this Court has already determined that the underlying proceedings terminated in Appellants' favor, we are precluded from reviewing this issue, as this is the law of the case. *Banker v. Valley Forge Insurance Co.*, 401 Pa.Super. 367, 585 A.2d 504, 508 (1991). As such, this Court's review is limited as to whether there are genuine issues of material fact regarding the probable cause element of wrongful use of civil proceedings. "A showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense against an action for malicious prosecution, which renders immaterial the issue of whether the prosecutor's motive is malicious." *Strickland v. University of Scranton*, 700 A.2d 979, 984 (Pa.Super.1997). "Usually, the existence of probable cause is a question of law for the court rather than a jury question, *but may be submitted to the jury when facts material to the issue of probable cause are in controversy.*" *McKibben v. Schmotzer*, 700 A.2d 484, 493 (Pa.Super.1997) (emphasis original).

¶ 7 Whether a person has probable cause to initiate, continue or procure a civil action against another is dictated by 42 Pa.C.S.A. § 8352, which provides:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts

---

**3.** Appellants' third issue is not properly before the Court at this time and will not be addressed in this opinion.

upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S.A. § 8352.

■■■ Thus, Appellants must prove that Sentner had no reasonable basis for filing the underlying action. Appellants must first show that Sentner lacked a reasonable belief in the facts on which the claim was based and in the validity of the claim under existing or developing law to escape liability under wrongful use of civil proceedings. *Gentzler v. Atlee*, 660 A.2d at 1382.

■■■ ¶ 8 In reviewing the record in the light most favorable to the non-moving party, the record reveals the following. A month after Sean's death, Deems first approached Sentner about being Sean's father. Although Sentner testified that Deems convinced him that Deems was the natural father, Sentner knew that Mark Painter was holding himself out to be Sean's father. Deposition of Fred Sentner, 1/13/97, at 46. Sentner also testified to doing extensive research on the issue of presumption of paternity at the time of commencing the lawsuit. *Id.* at 79.

¶ 9 In Stella Broadwater's affidavit supporting her answer in opposition to Sentner's motion for summary judgement, she alleges that she informed Sentner on November 5, 1993 that Mark Painter was named as the father on Sean's birth certificate. Answer to Motion for Summary Judgment, Affidavit, at 2. Sean's last name was Painter, and Mark Painter did not deny paternity when a support action was filed against him by the Department of Welfare. Deposition of Mark Painter, 5/9/94, at 41.

¶ 10 To properly determine whether there was probable cause to file the petition to revoke the letters of administration, we must review the relevant authority regarding the presumption of paternity existing at the time of the filing of the petition. The controlling Supreme Court case with regard to the presumption of paternity during the pertinent time period is *John M. v. Paula T.*, 524 Pa. 306, 312, 571 A.2d 1380, 1388 (1990). The Supreme Court held that one of the strongest presumptions in the law is that a child born during a marriage is a child of the marriage. *Id.* The presumption can only be overcome by proving facts establishing non-access or impotency. *Id.* 524 Pa. 306, 322, 571 A.2d 1380, 1388 (Nix, C.J., concurring). In addition, during the relevant time period our Court addressed the issue of a child conceived during the marriage, but born after the parties were divorced. *Everett v. Anglemeyer*, 425 Pa.Super. 587, 625 A.2d 1252, 1255 (1993). This Court has acknowledged that even if the family unit is not intact, the presumption of paternity still applies if the child was conceived during the marriage. *Id.* at 1256.

¶ 11 A review of the case law regarding the presumption of paternity would have raised questions of the validity of Deems' claim. In order for Deems to have standing to challenge the letters of administration, he must be able to rebut the presumption that Painter is the natural father. Sean was conceived while Bridgette and Mark were still married, and even though they were divorced before Sean was born, the presumption of paternity would have applied pursuant to *John M.*, *supra*. Even if Sentner believed that Deems was the natural father, the presumption of paternity was nevertheless a significant hurdle to overcome.

■■■ ¶ 12 Moreover, even if Sentner reasonably believed that Deems could rebut the presumption of paternity, Deems did not openly hold himself out as Sean's father prior to Sean's death. *See In Re Estate of Simmons–Carton*, 434 Pa.Super. 641, 644 A.2d 791 (1994) (holding that a father claiming paternity of a deceased child must show by clear and convincing evidence that he openly held out the child to be his during the child's

lifetime); 20 Pa.C.S.A. § 2107(c). Even if Deems were able to rebut the presumption of paternity, Deems still must show by clear and convincing evidence that he is the father of the child before he could make a claim against the letters of administration. This Court has stated that "the claims of paternity made after the lips of the alleged father have been sealed by death are in that class of claims which must be subjected to the closest scrutiny and which can be allowed only on strict proof so that injustice will not be done." *Estate of Hoffman*, 320 Pa.Super. 113, 466 A.2d 1087, 1089 (1983). Where the child has died and the evidence which would reveal the identity of the natural father can only be obtained by exhuming the child, the claim of paternity must be equally subjected to the closest scrutiny.

¶ 13 Sentner argues that because the law on the issue of paternity was changing at the time of the commencement of the underlying proceedings, he had a reasonable belief that Deems had a cause of action. However, after our independent review of the above pertinent cases, we find Sentner's argument to be specious. Moreover, Appellees' voluntarily withdrawal from the case with prejudice belies this contention as well. *See Gentzler v. Atlee*, 443 Pa.Super. 128, 660 A.2d 1378, 1384 n. 9 (1995) (failure to appeal before a court which has the ability to effect any change negates the argument that a lawsuit was filed in an effort to change current law). As such, we find that the issue of probable cause should properly go before a jury. "An action for wrongful use of civil proceedings will be upheld if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause." *Id.* at 1385.

¶ 14 When reviewing a motion for summary judgment, the trial court must examine the entire record, and after this examination must determine whether there is a genuine issue of material fact. *White v. Owens–Corning Fiberglas, Corp.*, 447 Pa.Super. 5, 668 A.2d 136, 142 (1995); citing *Nanty–Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). Moreover, summary judgment cannot be granted based upon evidence which depends solely on oral testimony. *White, supra* at 142. It is clear that a majority of the evidence considered here was deposition testimony. The credibility of the witnesses is dispositive of whether Sentner had probable cause to file the underlying action. "A witnesses' credibility is a determination for the jury and necessarily creates a genuine issue of material fact." *Id.* In reviewing the evidence in the light most favorable to the non-moving party, we find that there are genuine issues of material fact regarding the lack of probable cause and the claim should properly go before a jury.

¶ 15 Next, we must determine whether the lawsuit was filed for an improper purpose. *Gentzler*, 660 A.2d at 1385. Even if an attorney lacked probable cause in filing a lawsuit on behalf of a client, he is not liable for wrongful use of civil proceedings unless he filed the lawsuit with an improper purpose.

> An attorney who initiates a civil proceeding on behalf of his client, even if he has no probable cause and is convinced that his client's claim is unfounded, is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.
>
> If however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person.

*Gentzler v. Atlee*, 660 A.2d at 1382 n. 6 (citations and emphasis omitted). *Accord Meiksin v. Howard Hanna Co. Inc.*, 404 Pa.Super. 417, 590 A.2d 1303, 1305 (1991). An improper purpose may be inferred where the action is filed without justification. *Id.*

Given the facts Deems presented to Sentner, a claim, while tenuous at best, could have been made against the estate. Why Sentner chose to file a petition to revoke letters of administration, rather than filing a claim against the estate is unclear.[4] After a review of the deposition testimony and Sentner's course of conduct as revealed by the record, there are genuine issues of material fact regarding Sentner's purpose. One may infer that not only did Sentner want to advance the interests of his client, but may have also had an personal financial interest in Deems becoming the administrator of the estate. However, this is a question for the jury to decide. We find that based upon the facts of this case, there are genuine issues of material fact regarding Sentner's motives for filing the underlying proceeding.

¶ 16 Order reversed. Remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 17 FORD ELLIOTT, J., notes her Dissent.

**4.** *See* 20 Pa.C.S.A. § 3182 (setting forth the criteria necessary for a court to remove a personal representative of an estate). In his petition,

Deems does not state how Sean's estate would have been mismanaged by the Broadwaters.