J-A32010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KEYSTONE FREIGHT CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JEROME GAMBURG, ESQUIRE | |
| Appellee | No. 2615 EDA 2013 |

Appeal from the Judgment Entered November 12, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No. 1863 November Term 2011

BEFORE:  PANELLA, J., OLSON, J., FITZGERALD, J.*

MEMORANDUM BY PANELLA, J.                **FILED MARCH 24, 2015**

Appellant, Keystone Freight Corporation, appeals from the judgment entered on November 12, 2013 after a jury returned a verdict in favor of Appellee, Jerome Gamburg, Esquire, in Keystone Freight's action for wrongful use of civil proceedings, 42 Pa.C.S.A. §§ 8351-8354, commonly referred to as the ***Dragonetti*** Act.[1]  We affirm.

---

*Former Justice specially assigned to the Superior Court.

[1]     The ***Dragonetti*** Act provides, in pertinent part:

(a) Elements of action.--A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

    (1) he acts in a grossly negligent manner or without probable cause *and* primarily for a purpose other than that of securing the

*(Footnote Continued Next Page)*

The trial court aptly summarized the facts and procedural history of this case as follows.

> The underlying personal injury action arose from an automobile accident that occurred when Jared Watson collided with a tractor-trailer owned by [Keystone] and operated by its driver, Claudio Jarrett. Mr. Watson was operating a [r]ed Dodge Dakota pickup truck traveling northbound on Lincoln Highway in Bensalem Township, Pennsylvania when Mr. Jarrett pulled out of a Sunoco gas station[.] As Mr. Jarrett pulled out of the Sunoco station parking lot, the tractor-trailer he was operating created a wall that blocked all three northbound lanes of Lincoln Highway. Mr. Watson swerved, skidded, struck the tractor-trailer and was severely injured. One of the police officers, who investigated the accident in the days that followed, reviewed a Sunoco surveillance tape that showed the tractor-trailer pulling out of the parking lot without stopping prior to exiting onto Lincoln Highway.
>
> The underlying accident occurred at 2:00 a.m. in the morning, and Mr. Watson, who was only twenty years old, had been drinking allegedly at the Route One Café prior to operating his pickup truck on Lincoln Highway. Notwithstanding the fact that Mr. Watson had not reached the permissible age limit to legally consume alcohol, toxicology results taken following the accident established that his blood alcohol content was well in excess of acceptable limits for operating a motor vehicle in the state of Pennsylvania.[2] Officers who investigated the accident estimated that Mr. Watson was traveling at a speed of about 55 to 65 miles an hour prior to impact, while at least one [defense] expert … placed Mr. Watson traveling at as much as 70 miles

*(Footnote Continued)* —————

> proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a)(1)-(2) (emphasis added).

[2] Watson was ultimately convicted of DUI.

[per] hour prior to applying his brakes and taking evasive action to avoid the collision. Evidence presented at trial established that the speed limit applicable to this portion of the Lincoln Highway was 50 miles [per] hour.

Mr. Watson[,] with the assistance of Mr. Gamburg[,] filed a civil action complaint against [Keystone] and its driver, Mr. Jarrett. He also brought a Dram Shop [a]ction against Route One Café that was ultimately consolidated with this action. The Dram Shop case was settled, and the case against [Keystone] and its driver … went to trial after defense motions for summary judgment and non-suit were denied. The jury in the underlying action returned a defense verdict.

Trial Court Opinion, dated June 20, 2014, at 1-2 (footnote added).

After the entry of judgment, Keystone filed the instant ***Dragonetti*** action against Attorney Gamburg, his law office, and Watson. It ultimately withdrew the action against all but Gamburg. After a trial, the jury returned a verdict in favor of Gamburg, finding that he had not acted with probable cause in bringing the underlying action, but concluded that he had not brought the lawsuit "merely to harass or maliciously injure Keystone." ***Id***. at 3. The court denied post-trial motions, and Appellant appealed to this Court.

Appellant raises the following issues:

a. Whether the trial court erred in denying Appellant's motion for post-trial relief, as the jury's verdict was clearly against the weight of evidence presented at trial because the evidence unequivocally showed that Appellee's primary purpose for initiating and continuing the litigation in the underlying matter was improper.

b. Whether the trial court erred in refusing to charge the jury with the Appellant's proposed points for charge for wrongful use of civil proceedings.

     c. Whether the trial court erred in refusing to grant a mistrial due to Appellee's counsel's prejudicial and inappropriate comment made during jury selection.

Keystone first avers that the jury's verdict was against the weight of the evidence because its legal malpractice expert testified that Gamburg had engaged in the wrongful use of civil proceedings in initiating and maintaining the underlying action for an improper purpose. In support, Keystone relies, *inter alia*, on a conversation that occurred during settlement negotiations between a Keystone representative and Gamburg in which Gamburg allegedly stated that any settlement would be "found" money. Appellant's Brief at 28.

Our review of challenges to the weight of the evidence is well-settled.

> In evaluating a claim that a verdict is against the weight of the evidence, Pennsylvania courts employ a shocks-the-conscience litmus. The trial judge's authority to award a new trial on weight-of-the-evidence grounds is narrowly circumscribed on account of the principle that credibility questions are exclusively for the fact finder. The matter is couched as discretionary in the trial court, with its role in the assessment being afforded primacy in view of its substantially closer vantage to the evidentiary presentation as compared to that of an appellate court. Relief is available in an appellate court only it can be said that the trial court acted capriciously or palpably abused its discretion.

***Com., Dept. of General Services v. U.S. Mineral Products Co.***, 956 A.2d 967, 973–974 (Pa. 2008) (footnote and citations omitted).

In addition, "[i]t is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact; we will not substitute

our judgment for that of a fact-finding jury." ***Vattimo v. Eaborn Truck Service Inc.***, 777 A.2d 1163, 1165 (Pa. Super. 2001) (citation omitted).

As noted above, the ***Dragonetti*** Act requires that one alleging misuse of civil proceedings must prove not only that the underlying action was not supported by probable cause, but also that the suit was instituted "primarily for a purpose other than that of securing the proper discovery, joinder of parties[,] or adjudication of the claim in which the proceedings are based." 42 Pa.C.S.A. § 8351(a)(1). With respect to attorney liability, "as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case." ***Keystone Freight Corp., v. Stricker***, 31 A.3d 967, 973 (Pa. Super. 2011).

In the instant case, the trial court stated:

In its motion for post-trial relief, [Keystone] argued that the evidence was of such a character that Mr. Gamburg's motive to harass and maliciously injure was so plainly obvious that no other conclusion could have been reached. In support of its argument, [Keystone] highlighted a convers[at]ion that, both sides agreed, took place during settlement negotiations between Mr. Gamburg and one of its employees, Michael Donald Luffy. At trial, Mr. Luffy testified that during these discussions, Mr. Gamburg stated that if he won the lawsuit he would merely be extracting "found" money from [Keystone]. When Mr. Gamburg was questioned about this conversation during cross-examination, the following exchange occurred:

Q: You had those conversations with Mr. Luffy about found money?

A: I may have said it. I don't remember … And if I said it, so what? It would have been. I collected already, settled from the bar. (Tr.Transcr. 214 (4/16/13)).

- 5 -

In addition to this conversation, [Keystone] also highlighted the facts that Mr. Gamburg's client in the underlying matter was driving drunk, speeding[,] and crashed into its tractor-trailer. In essence, [Keystone] suggests that [ ] Mr. Gamburg, displayed improper motive in attempting to extract a settlement from [Keystone] in an action wherein his own underage, drunk-driving client had already, undeservedly, recovered a settlement from the tavern that allegedly served him. [Keystone] suggested that Mr. Gamburg should not have represented Mr. Watson in the underlying matter because Mr. Watson got what he deserved when he was injured in a drunken driving accident.

Whatever the [j]ury may have decided about the underlying settlement negotiations, it is clear that the [j]ury disagreed with [Keystone's] characterization of the evidence. It is quite possible the [j]ury viewed the conversation as the type of puffery that typically accompanies adversarial proceedings. It is also possible the [j]ury frowned on Mr. Luffy's disclosure of what it viewed as statements made during confidential settlement discussions. There is simply no way to know what weight was given to this evidence but it is fundamental law that the [j]ury was free to give it the weight to which it deemed it was entitled.

… [T]he jury was never required to reject the conclusion that Mr. Gamburg had acted in good faith when he filed or continued the underlying litigation; it simply had to find that [Keystone] failed to prove improper motive. When examining Mr. Gamburg's motive, the [j]ury was presented with a situation in which a young man, Mr. Watson, was severely injured in an automobile accident. This Court would never condone Mr. Watson['s] behavior; however, the fact remained, competent evidence was proven that demonstrated that Mr. Jarrett created a proverbial brick wall that blocked three lanes of travel on Lincoln Highway at 2:00 a.m. in the dark when he drove his tractor-trailer into oncoming traffic as he left the Sunoco parking lot. The evidence also clearly showed that Mr. Watson was traveling in a straight line down Lincoln Highway prior to the collision, and the investigating police officers placed him traveling at a speed of about 55 to 65 miles an hour – slightly over the posted speed limit. The accident also happened several miles from the Route One Café where Mr. Watson was apparently drinking, and this suggested at least in part that he was able to operate his vehicle without crashing for several miles along Route One and then Lincoln Highway. Mr. Watson bore a tremendous amount of responsibility for the underlying motor vehicle collision.

- 6 -

> However, Pennsylvania is a comparative negligence state and Mr. Gamburg testified that he believed that any comparative negligence of Mr. Watson did not outweigh the negligence of the [Keystone's] driver, Mr. Jarrett. Accordingly, he testified his client could still have won a verdict against [Keystone] if the jury agreed with his theory of the case.
>
> In addition to Mr. Gamburg's independent belief, it should be mentioned that the underlying matter was in fact presented to a jury for a determination on its merits after motions for summary judgment and non-suit were denied. While this fact, in and of itself, is not dispositive of the issue discussed therein, it does support the conclusion that a legitimate issue of fact was presented for consideration by the [j]ury in the case *sub judice*. After due deliberation, the [j]ury found that [Keystone] had failed to prove by a preponderance of the evidence that Mr. Gamburg had acted with an improper motive when he initiated and continued the underlying litigation.

Trial Court Opinion, dated 6/20/14, at 7-9.

Based on our review of the record and consideration of the trial court's thorough analysis, we conclude that the trial court did not act capriciously or palpably abuse its discretion in refusing to grant Keystone a new trial or judgment n.o.v.

Appellant next argues that the trial court erred in charging the jury with Pennsylvania Suggested Standard Jury Instruction ("SSJI") 17:70, instead of Keystone's proposed jury charge.

Our review of challenges to jury instructions is well-settled.

> Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.

- 7 -

Further, a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law.

*Philips v. Lock*, 86 A.3d 906, 916-17 (Pa. Super. 2014).

In the instant case, the trial court gave the following instruction while reading directly from SSJI 17:70:

A person who takes part in the procurement, initiation, or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings if: A, he or she acts in a grossly negligent manner, or, B, without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim in which the proceedings are based, and, C, the proceedings have terminated in favor of the person against whom they were brought.

As a matter of law, I will tell you that the defendant caused civil proceedings to be initiated against the plaintiff, and that the civil proceedings terminated in favor of the plaintiff.

Gross negligence is failure to use even slightest care or failure to exercise the degree of care that even the most inattentive would take as set forth in the statute.

Even if the defendant has acted in a grossly negligent manner or without probable cause, your verdict must be for the defendant if you find that he acted primarily for the purpose of securing the proper discovery, joinder of parties , or adjudication of the claim in which the proceedings are based.

If you find the defendant reasonably believed in the existence of facts upon which the claim was based and, A, reasonably believed that under those facts the claim may have been valid under the existing or developing law or, B, believed as a lawyer of record in good faith that his procurement, initiation, or continuation of the civil cause was not intended to merely harass or maliciously injure the opposite party, then you must find that the defendant acted with probable cause.

Trial Court Opinion at 11; R.R. at 653a.[3]

As the trial court noted, the SSJI instruction provided to the jury tracks the language of the **Dragonetti** Act itself. **See** 42 Pa.C.S.A. § 8351, *supra*. Keystone nonetheless contends here that the trial court should have instructed the jury that "an improper purpose may be inferred where the action is filed without justification." Appellant's Brief at 34 (citing **Broadwater v. Sentner**, 725 A.2d 779, 784-85 (Pa.Super. 1999), and **Ludmer v. Nernberg**, 640 A.2d 939, 943 (Pa. 1994)).[4] We disagree.

Because the trial court's jury charge tracked the language of the *Dragonetti* Act, and the jury instructions as a whole adequately explained the law, we conclude that the trial court did not abuse its discretion or commit an error of law that controlled the outcome of the case.

In its final issue, Keystone alleges that it should have been granted a mistrial because Gamburg's counsel "unfairly biased the jury in [Gamburg's]

---

[3] We refer to the Reproduced Record for the convenience of the parties.

[4] Neither case supports Keystone's contention. In **Broadwater**, this Court reversed a grant of summary judgment after determining that the attorney had had a reasonable basis for filing the underlying action. In **Ludmer**, this Court affirmed the denial of judgment n.o.v. after concluding that the attorney's own testimony showed that he knew he was acting with an improper purpose in instituting and maintaining an action against a doctor without his client's consent and, in fact, against the express wishes of his client. The phrase "without justification" as used in both cases referred to specific fact-based circumstances, circumstances which are not present in the instant case. Moreover, in neither **Broadwater** nor **Ludmer** was there an issue of a fact-finder drawing an inference or a challenge to jury instructions.

favor" when he stated, during jury selection, that Gamburg had never been sued for malpractice. Appellant's Brief at 38 (citing RR. 536a-37a). In support, Keystone cites to the following colloquy that occurred before the commencement of the trial:

> Joseph Toddy, Esquire, Keystone's counsel: There was a mention by Mr. [David F.] Binder [Gamburg's counsel], when we were picking the jury, that his client had never previously been sued for malpractice. We don't want that to be said to the jury. It's not relevant to these proceedings. First off, we don't know if it's true. We don't know if there was other claims [sic] made.
>
> The court: Mr. Binder indicated on Friday he does not intend to do that again. I gave you all the opportunity, Mr. Toddy, to colloquy or question each juror in individual voir dire as to whether or not that remark made any difference to them. You chose not to. I consider that to be a waiver on that issue as to whether or not it affected the jury.
>
> Going forward, however, Mr. Binder, there should be no further remarks of those kinds.
>
> Mr. Toddy: And, Your Honor, just since we're on that, I did move for a mistrial. I just want to put that on the record.
>
> The court: I understand. Yes, you did. You asked for a mistrial even though we had not formally sworn in the jury. But I indicated to you that you had the ability to question each juror because we had not formally selected the jury yet. We had not selected or you had not exercised your strikes at that point. I gave you all the opportunity to question each juror individually as to whether or not that remark would matter to them when it came to coming to a decision on a case. You declined to do that. That's why I said I considered the matter waived. We're moving on.

R.R. at 536a-537a.

Without acknowledging the trial court's finding of waiver, citing relevant authority, indicating where in the record evidence of prejudice could

- 10 -

be found, and without providing any analysis, Keystone summarily concludes that "the lack of a proper remedy allowed this prejudicial, inappropriate, and irrelevant comment to influence the jury's decision during deliberation and created an unfair advantage for the Appellee from the outset of the trial." Appellant's Brief at 39. The trial court did not address this argument in its Pa.R.A.P. 1925(a) opinion, and Keystone's conclusory allegations fail to provide a basis upon which to permit this Court "to render a reasoned conclusion." ***Robinson Twp., Wash. Cty. V. Commonwealth***, 83 A.3d 901, 940 n.28 (Pa.2013). Accordingly, this issue is waived.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/24/2015