**Pauline A. MARTIN, Appellant,**

**v.**

**David T. MARTIN, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 1998.

Filed March 18, 1998.

Edith L. Dowling, Wellsboro, for appellant.

Jarett R. Smith, Wellsboro, for appellee.

Before POPOVICH and MUSMANNO, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Appellant Pauline A. Martin appeals from the order of the Court of Common Pleas of Tioga County. We affirm.

On October 22, 1995, Pauline Martin gave birth to a daughter, Tiffany Martin. At that time, Pauline was divorced from her former husband, Leon Fuller, and was married to appellee David Martin, to whom she had

been married prior to her marriage to Fuller. Although Pauline and David Martin were married when Tiffany was born, they did not reside together at that time. The parties lived together for a brief time during their second marriage; on August 27, 1996, David Martin moved out of the parties' residence.

Pauline Martin filed a complaint in support and a hearing was held in October of 1996. At the hearing, David Martin acknowledged paternity of the parties' older child, David T. Martin, Jr., who was born on May 24, 1993, during the parties' first marriage. At the conclusion of the hearing, the court entered a zero support order with respect to both children.[1]

On April 22, 1997, David Martin petitioned the court for blood tests to determine the paternity of Tiffany Martin. *See* 23 Pa. C.S.A. § 5101 *et seq.* In her answer, Pauline Martin responded that at the time of Tiffany's birth, David Martin did not object to placing his name as the natural father on Tiffany's birth certificate. She also contended that David Martin, Pauline, Tiffany, and the parties' older son had lived together, as a family, and that David Martin had acknowledged Tiffany as his daughter, evidenced by a card he had sent her that he had signed, "Daddy." Pauline also argued that David Martin was barred from contesting paternity under the doctrine of *res judicata* because his exceptions to the support order, wherein he had contested paternity, had been denied. Following a hearing, the court granted David Martin's request and ordered blood tests for Pauline Martin, David Martin, Tiffany Martin and Leon Fuller. This appeal followed.

Pauline Martin raises one issue for our review: Whether the court ignored a legal presumption and statutory law and abused its discretion when it ordered blood tests of mother, husband and child at the request of husband when husband had acknowledged the child for one and one-half years since the time of the child's birth?

Historically, the presumption of paternity has reigned as "one of the strongest presumptions in Pennsylvania law." *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997). *See*

*John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380, *cert. denied*, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Ruth F. v. Robert B.*, 456 Pa.Super. 398, 690 A.2d 1171 (1997) (*en banc*); *Paulshock v. Bonomo*, 443 Pa.Super. 409, 661 A.2d 1386 (1995); *cf.* 23 Pa.C.S.A. § 5102(a). Although rebuttable, traditionally the presumption could be overcome only by proof that the husband did not have access to his wife during the period of possible conception, or by proof of the husband's impotency or sterility. *See John M., supra; see also Commonwealth ex rel. O'Brien v. O'Brien*, 390 Pa. 551, 136 A.2d 451 (1957) (the presumption can be overcome only by proof that the husband did not have access to his wife during the period of conception); *Kohler v. Bleem*, 439 Pa.Super. 385, 654 A.2d 569 (1995) (clear and convincing evidence of husband's vasectomy and subsequent lack of spermatozoa in his semen rebutted the presumption that child born during marriage was a child of the marriage).

As one legal periodical has observed, this court has struggled to reconcile modern family structures with traditional principles of law. "Modern Love; Superior Ct. Struggles with Presumption of Paternity," 21 *Pennsylvania Law Weekly* 211, pp. 30–31 (February 16, 1998). And, as this court has recognized, time-worn principles of law may not be relevant where the family has been broken down, or where the structure does not conform to that contemplated by the law or doctrine in question. *See Kohler, supra.*

In the case before us, Pauline was married to Leon Fuller at the time of Tiffany's conception; she was married to David Martin at the time of Tiffany's birth. Pauline argues that the court erred in refusing to apply the presumption of paternity against David Martin because she was married to him at the time of the child's birth. *See, e.g., John M., supra; Ruth F. v. Robert B., supra; Miscovich v. Miscovich*, 455 Pa.Super. 437, 688 A.2d 726 (1997); *Kohler, supra; see also* 23 Pa.C.S.A. §§ 5102(a), 5104(g).

Our supreme court recently reviewed the presumption in *Brinkley, supra.* Lisa Brinkley was married to George Brinkley

1. Martin was unemployed at the time and receiving public assistance.

when Lisa's daughter was conceived. Lisa testified that although she was married at the time of conception, she and her husband did not have sexual relations. Lisa testified that at the time of conception she and Richard King had engaged in sexual relations. Upon learning that his wife was pregnant by King, Brinkley filed for divorce. Lisa testified that King came to the hospital when the child was born and, thereafter, for a period of approximately two years, visited the child on a weekly basis. The visits terminated when Lisa filed a complaint for support against King. King denied paternity and refused blood testing. Lisa sought an adjudication of paternity and King answered that the presumption applied and that Lisa Brinkley had failed to rebut the presumption that her former husband was the father. *Id.* at 244–46, 701 A.2d at 178.

The trial court agreed with King, concluding that Lisa was unable to establish that Brinkley "had no access during the period of conception[.]" *Id.* This court affirmed and the Supreme Court of Pennsylvania granted allocatur in order to review "the way in which the presumption of paternity functions in Pennsylvania law." *Id.*

In *Brinkley*, a plurality decision, the supreme court examined its decisions in *John M., supra,* and *Jones v. Trojak,* 535 Pa. 95, 634 A.2d 201 (1993), and reiterated the fundamentals of the law of presumptive paternity:

[A] child conceived or born during the marriage is presumed to be a child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access [ ] to the mother or the presumptive father was physically incapable of procreation at the time of conception. However, the presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage.

*Brinkley,* 549 Pa. at 246–48, 701 A.2d at 179 (footnotes and citations omitted). The court observed that

the presumption of paternity embodies the fiction that regardless of biology, **the married people to whom the child was born are the parents**; and the doctrine of estoppel embodies the fiction that, regardless of biology, in the absence of a marriage, the person who has cared for the child is the parent.

*Id.* at 248–50, 701 A.2d at 180 (emphasis added). The court then presented the essential legal analysis:

First, one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered. If the trier of fact finds that one or both of the parties are estopped, no blood tests will be ordered.

*Brinkley,* 549 Pa. at 244–46, 701 A.2d at 178. The court also stated that "[t]raditionally," the presumption applies "if the child was **conceived or born during the marriage.**" *Id.* (emphasis added). Noting the dramatic changes in the nature of family relationships, however, the lead opinion, authored by Chief Justice Flaherty, broke with tradition and stated that the presumption would *not* apply where it would not advance the policy underlying the presumption, that is, the preservation of marriage. *Id.* at 250–52, 701 A.2d at 181.

The presumption, then, has lost much of its vigor. In *Kohler, supra,* this court suggested that blindly applying the presumption might well work an injustice:

The presumption . . . and the doctrine of paternity by estoppel grew out of a concern for the protection of the family unit; where that unit no longer exists, it defies both logic and fairness to apply equitable principles to perpetuate a pretense. In [*Kohler*], application of estoppel would punish the party that sought to do what

was righteous and reward that party that has perpetrated a fraud.

*Kohler,* 439 Pa.Super. at 395–98, 654 A.2d at 575–76. In *Miscovich, supra,* this court repeated its concerns:

> Our society has embarked upon an era in which the usefulness of the presumption of legitimacy as a legal tool must be questioned[;] ... our courts must make necessary adjustments in the law ... **revisit the policies underlying the presumption,** and insure that the equilibrium has not been shifted to a point of inequity. In keeping with this principle, it is suggested that the protection of the traditional family unit need not be dictated by the presumption. **We need not blindly apply it, nor cling to timeworn principles to support the Commonwealth's goal of protecting the family.** A careful analysis of each factual scenario, in particular the relationship between the presumptive or putative father and child, ... as well as the "known factor" of a putative father against whom a support claim may be made, is necessary to fair and just application of paternity law.

*Miscovich,* 455 Pa.Super. at 445, 688 A.2d 726 at 730 (emphasis added).

In *Brinkley,* our high court has responded: "*Cessante ratione legis, cessat et ipsa lex*[,]" 549 Pa. at 250, 701 A.2d at 181,—"The reason

of the law ceasing, the law itself also ceases." *Black's Law Dictionary,* p.—(5th ed.1979). We find that *Brinkley* controls this issue, and we apply it to guide our analysis.[2]

In *Brinkley,* the child was conceived during the marriage; the presumption, therefore, could be applied. The court, however, chose to dispense with it because at the time Lisa filed for support, there was no marriage. Our learned Chief Justice reasoned: "The presumption of paternity ... has no application to this case, for the purpose of the presumption, to protect the institution of marriage, cannot be fulfilled." *Id.* at 251, 701 A.2d at 181. The court concluded, therefore, that the trial court erred in failing to consider estoppel evidence, and the court noted that "[e]stoppel evidence may be presented where the presumption does not apply." *Id. Cf.* 23 Pa.C.S.A. § 5102(b)(2) (the General Assembly has codified those principles of paternity by estoppel that are applicable in cases involving children born **out of wedlock**).

In the instant case, Tiffany was both conceived and born during marriage. The two critical points, however, involve two different marriages.[3] When Pauline sought support from David Martin, the parties were separated. Realistically, there was, and is, no intact family. Application of the pre-

---

**2.** Madame Justice Newman, joined by Mr. Justice Castille, agreed with the Chief Justice's determination that the presumption "does not apply where its purpose is not served." *Brinkley,* 549 Pa. at 259, 701 A.2d at 185. Their disagreement with Chief Justice Flaherty's opinion related to the means of rebutting the presumption, and not on when the presumption should be applied. Thus, four justices, a majority, agreed that the presumption should not be applied where there is no intact marital unit to protect. *Id. See Green v. Good,* 704 A.2d 682, 683 (Pa.Super.1997). Mr. Justice Zappala found non-access was established by Lisa Brinkley's testimony that she and her husband did not have sexual relations at the time of her daughter's conception. *Brinkley,* 549 Pa. at 252–54, 701 A.2d at 182. Mr. Justice Nigro would abolish the presumption of paternity and "allow the trial court to determine paternity on a case-by case basis, unburdened by the obligatory application of a presumption or an estoppel theory." *Id.* We echo Justice Nigro's wisdom—abandoning the two doctrines in favor of the judicious use of blood testing will not result in

> any more strain on a marriage unit than would, for example, forcing a cuckolded husband, because of the presumption, to care for a child he knows is not his—a situation which would strain both the marriage *and* the husband's relationship with the child. Blood testing would also work to eliminate situations where a man is deceived into believing he is the father and is then made to bear legal responsibility, by reason of estoppel, for a child that is not his.

> *Id.*

**3.** We note our disagreement with the trial court's reasoning that "there can be no presumption that David Martin is the father of the child" because he was not living with Mrs. Martin at the time of the child's birth. Technically, this is incorrect. The parties remarried before the child's birth, were married at the time of the child's birth, but did not live together until after the child's birth.

sumption in this case would not advance its underlying policies. *See Brinkley*, 549 Pa. at 251 n. 8, 701 A.2d at 181 n. 8 ("Our view, as expressed today, would be that **when the parties separated, the presumption of paternity was inapplicable[.]**") (emphasis added). *See also Green, supra* (applying *Brinkley* majority analysis, the court found there existed no marital unit to preserve so the presumption of paternity did not apply).

Because the presumption is not applicable, our next inquiry under the *Brinkley* framework is whether estoppel principles are applicable. *Id.* at 248–50, 701 A.2d at 180. Because "the facts include estoppel evidence, such evidence must be considered." *Id.*

 The evidence in this case indicates that Martin was present during the birth of the child and lived with the child for eighteen months. By his own testimony, Martin offered little caretaking and even less financial support. During the time the family lived together, Martin was unemployed and offered no financial assistance to his wife, in whose name the apartment was rented. Essentially, Martin fulfilled no fatherly obligations. A name on a certificate does not create a father/child relationship where one in fact does not exist. This alone is insufficient to support a finding of estoppel. We conclude, therefore, that the evidence presented does not support a finding of paternity by estoppel in Martin.

Furthermore, we point out that the public policy behind the presumption, to preserve a marriage in the face of a dispute over parentage, is realistically advanced only when a **third party**, one outside the marriage, **asserts** his paternity as against the husband—a patent threat to the intact family unit. *See Green*, 704 A.2d at 684 ("[T]he interest of a third party pales in comparison to the overriding interest of the presumed father, the marital institution and the interest of the Commonwealth in the family unit."). On the contrary, once a man attempts to refute his paternity and is met with the presumption, we delude ourselves if we believe clinging to the fiction can preserve the marriage.

The goal of this Commonwealth, of our nation, is to foster responsibility in parenthood, not maintain barriers that shield one from it. A practical and effective paternity determination will arguably advance this goal; if blood tests cannot be so easily avoided, one may more fully realize the consequences of his or her actions. In essence, only one man can be the biological father, and when his paternity is determined, he is the only man legally obligated to support the child. In this case, where no intact family will be preserved by application of the presumption, the search for the truth should not be denied.

We conclude that the presumption is not applicable here. *Brinkley, supra.* The evidence is not sufficient to establish paternity by estoppel, *see Jones, supra; Commonwealth ex rel. Goldman v. Goldman*, 199 Pa.Super. 274, 184 A.2d 351 (1962), and therefore blood tests were properly ordered. We affirm the trial court's order.

Order affirmed.

POPOVICH, J., concurs in the result.