**CW, Appellant**

**v.**

**LV and GV, Appellees.**

Superior Court of Pennsylvania.

Argued April 4, 2001.

Filed Nov. 26, 2001.

William L. Stang, Pittsburgh, for appellant.

Gino F. Peluso, Lower Burrell, for L.V.

Joseph P. Covelli, Pittsburgh, for G.V.

Before: DEL SOLE, President Judge, EAKIN and BROSKY, JJ.

EAKIN, J.:

¶ 1 CW appeals from the order granting the preliminary objections of GV and dismissing CW's custody complaint. We affirm.

¶ 2 The trial court has set forth the facts:

CW filed a complaint for partial custody on June 19, 1998, after claiming that LV, Defendant, hereinafter "Mother", was no longer allowing him to see BV, date of birth 9/1/88, hereinafter "Child". Mother filed an answer to Complaint for Partial Custody on [sic] August 6, 1998, denying CW's allegations that he is the father of Child and asserting that the Father is GV to whom she was married when the Child was born. Mother further denies that the Child has spent any significant time with CW. Subsequently, CW and Mother participated in the Generations Program.[1] On November 5,

1. Generations is the Allegheny County education/mediation-orientation program which

1998, since the parties completed mediation and custody was not resolved[,] a custody conciliation was scheduled before the custody conciliator on January 14, 1999. On said date the parties were unable to reach an agreement due to the issue of paternity. The case was, in turn, set for conciliation before this member of the court on March 8, 1999. Father petitioned the court to enter an appearance and leave to file preliminary objections and contest jurisdiction on March 30, 1999. The court granted the petition and Father filed his Preliminary Objections on April 5, 1999. Mother filed an Answer. Thereafter, Mother and Father filed a Motion for Judgment on the Pleadings. After two and a half days of evidentiary hearings on August 9, November 23, 1999, and April 3, 2000, Preliminary Objections were granted and the partial custody complaint was dismissed. CW then filed this appeal. Mother and Father were married on June 13, 1970. They have three children, RV, age 25, SV, age 18, and BV, age 11. It is the paternity of BV that is in question.

Father, Mother and CW had known each other for approximately 30 years, and according to CW's testimony, he and Mother had an on-going sexual relationship around the time Child was conceived. He also testified that Mother had told him that she and Father were not engaged in sexual relations at the time Child was conceived, and that the two were in fact sleeping in separate quarters.

Further, CW testified that he regularly spent time with the Child throughout the first ten years of his life, including taking him to family reunions and holiday gatherings. He testified that he and Mother had an informal agreement whereby he made child support payments to Mother, and, in exchange, was able to spend time with him.

Father disputes that Mother ever slept anywhere but in their bed and denies any acknowledgment that CW is the father of Child. He completely contradicts all of CW's testimony. Mother's pleadings support the Husband's position.

Trial Court Opinion, 9/1/00, at 2–4.

¶ 3 Appellant raises the following issues:

A. Whether the [trial] court erred in refusing to permit the cross-examination of a party and presentation of rebuttal evidence at an evidentiary hearing.

B. Whether the [trial] court erred in placing the burden of proof on appellant to overcome preliminary objections without first requiring production of evidence to support the preliminary objections.

C. Whether the presumption of paternity may be applied to bar a party from seeking to establish that he is the father of a child, when application of that presumption would destroy an existing parent-child relationship.

D. Whether a party may be estopped from invoking the presumption of paternity when that party has engaged in conduct that has resulted in establishment of a strong parent-child relationship.

Appellant's Brief, at 4.

■ ¶ 4 Our standard of review is well settled:

The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors

each party in a custody action must attend.

that legitimately affect the child's physical, intellectual, moral and spiritual well-being.

*Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264, 265 (1997) (citations omitted).

¶ 5 We address appellant's third claim first:

A child conceived or born during the marriage is presumed to be a child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access to the mother or the presumptive father was physically incapable of procreation at the time of conception. However, the presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage. [Further,] the presumption of paternity embodies the fiction that regardless of biology, *the married people to whom the child was born are the parents.*

*Martin v. Martin*, 710 A.2d 61, 63 (Pa.Super.1998) (citing *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176, 179–80 (1997) (emphasis added)). The public policy behind the presumption of paternity is the preservation of families, which should not be destroyed by a dispute over the parentage of a child conceived or born during the marriage. *Brinkley*, at 180. A third party should not be allowed to attack the integrity of a functioning marital unit, "based on public policy that children should be secure in knowing who their parents are." *Id.* If a person has acted as a father and bonded with a child, the child should not be required to suffer the potentially damaging emotional trauma that may come from being told his father, who he has known all his life, is not in fact his father. *Id.*

¶ 6 BV was born into an intact marriage of 29 years. During the hearing, the trial court stated:

An intact family is a family that is a functional family; let's put it that way, as opposed to a dysfunctional family. When a child lives in a household and has two parents there on a regular, recurring basis and who interacts with each other on a daily basis. And with all the normal things that go on in families, the discipline, communication, the making of meals, going to bed at night, getting up in the morning. And interaction with other community things; church, extended family.

N.T. Hearing, 4/3/00, at 10.

¶ 7 The record shows GV has played an active role in BV's life, and held him out to the community as his son. Together, they became involved in soccer, tee-ball, and cub scouts; in response, the community considered GV BV's father. Activities include bathing BV, making dinners and acting as primary caregiver. There is an intact family to preserve, one that the trial court properly determined shall not be disturbed by allowing the intervention of appellant to cause further detriment to BV and the family as a whole.

¶ 8 The party attempting to rebut the presumption has the burden of proof. Traditionally, the presumption of paternity can only be overcome by proving a husband did not have access to his wife, or was sterile or impotent during the time of conception. *Martin, supra,* at 62 (citation omitted).

¶ 9 Appellant relies on *Ambrose v. Cross Creek Condominiums*, 412 Pa.Super. 1, 602 A.2d 864, 869 (1992) for the proposition the burden of proof should be placed on GV to support his preliminary objections before appellant answers such objections. *Ambrose* was a slip and fall case; it did not involve the presumption of paternity or

a custody issue. The present case concerns the presumption of paternity, a hurdle appellant must overcome. A substantive presumption is not avoided merely because of the procedural stage of the case. As the trial court properly placed the burden of proof on appellant, *see Martin, supra,* appellant's second claim fails.

¶ 10 The trial court did not err in refusing to permit the cross-examination of GV, or presentation of rebuttal evidence by appellant at the evidentiary hearing. As appellant failed to present any evidence to rebut the presumption of paternity, the trial court could well have ended its inquiry once appellant rested. After GV testified he never lacked access to his wife during the period of conception, was neither sterile nor impotent, and is listed as father on BV's birth certificate, the trial court stated the evidence more than rebutted appellant's testimony. The court further stated GV had produced enough evidence to prove the existence of an intact family. Relying on the presumption of paternity, the court precluded appellant from having further standing on the issue of paternity. As appellant failed to rebut the presumption in his primary presentation, there is no error in refusing to let him attempt to meet his burden in rebuttal.

¶ 11 Regarding appellant's final claim, we reiterate: "the presumption [of paternity] is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage." *Martin, supra,* at 63. GV proved the existence of an intact marriage. As a result, "[t]he interest of [appellant] pales in comparison to the overriding interest of the presumed father, the marital institution and the interest of the Commonwealth in the family unit." *Id.,* at 65. Further, "if the family remains intact up to and beyond the birth of the child, despite evidence that rebuts the presumption of paternity, estoppel will apply . . . ." *Amrhein v. Cozad,* 714 A.2d 409, 412 (Pa.Super.1998). The V's were married before and after the birth of BV and remain married. Accordingly, appellant cannot rely on the presumption of paternity to support his standing; the presumption is exactly what bars him from disturbing this intact family.

¶ 12 Because the trial court committed no errors of law and appellant did not rebut the presumption of paternity, we affirm the order granting the preliminary objections of GV and dismissing appellant's complaint.

¶ 13 Order affirmed.