J-E02010-15
J-E02011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| M.C. AND D.T. | |
| APPEAL OF M.C. | |
| | No. 412 EDA 2014 |

Appeal from the Order Entered January 28, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No: 12-09900

| | |
|---|---|
| J.J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| M.C. AND D.T. | |
| APPEAL OF D.T. | |
| | No. 416 EDA 2014 |

Appeal from the Order Entered January 28, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No: 12-09900

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., DONOHUE, J.,
SHOGAN, J., ALLEN, J., LAZARUS, J., MUNDY, J., and STABILE, J.[*]

---

[*]  Judge Allen did not participate in this decision.

J-E02010-15
J-E02011-15

DISSENTING MEMORANDUM BY STABILE, J.:     **FILED OCTOBER 14, 2015**

I must respectfully dissent from the Majority's decision because (a) J.J., the party with the burden of proof, produced no evidence to challenge whether the marriage between M.C. and D.T. was not intact as of the time of his paternity challenge, and (b) the record contains uncontradicted evidence that M.C. and D.T. remained married, were living together, and were raising the child as a child of the marriage at the time of J.J.'s paternity challenge. Binding precedent from our Supreme Court dictates that the relevant inquiry is **as of the time of the paternity challenge**, and therefore, the presumption applies in this case and is **irrebuttable**. *Strauser v. Stahr*, 726 A.2d 1052, 1053 (Pa. 1999). The *En Banc* Majority, in an unpublished memorandum, has afforded the trial court in this case unreviewable discretion to disregard uncontradicted facts and, along with them, an irrebuttable presumption. I disagree and would reverse the trial court's order.

The pertinent facts are as follows. M.C. and D.T. are legally married and have been since June 21, 2007. Minor Child P.T. was born on September 8, 2012, and D.T. is listed as P.T.'s father on P.T.'s birth certificate. As explained in the Majority's Memorandum, M.C. engaged in an extensive extramarital affair with J.J. that continued through the time of P.T.'s conception. **While the trial court chronicled in detail the extramarital events between J.J. and M.C. leading up to the time of**

- 2 -

**P.T.'s birth, the trial court found no facts to support similar conduct as of the time of P.T.'s birth and J.J.'s paternity challenge. To the contrary, the uncontradicted record established that, since P.T.'s birth, M.C. and D.T. have remained married, are living together, and together are raising P.T. as their child. Under binding precedent that the Majority and the trial court have ignored, these facts trigger an irrebuttable presumption that M.C. and D.T. are P.T.'s parents.**

The trial court's disregard of controlling precedent and uncontradicted facts culminated in the January 27, 2014 order directing M.C., D.T., J.J. and Minor Child P.T. to undergo genetic testing.[1] M.C.'s deplorable and duplicitous conduct prior to P.T.'s birth and J.J.'s paternity challenge does not justify the Majority's decision to ignore the irrebuttable presumption of paternity under the guise of deference to trial court fact finding.

Our Supreme Court addressed the irrebuttable presumption of paternity doctrine in **Strauser**. There, the appellant putative father sought to establish paternity of a girl born to appellee mother during her marriage. **Strauser**, 726 A.2d at 1052-53. Appellee mother remained married to appellee husband throughout the litigation. **Id.** at 1053. Blood tests indicated a 99.99% probability of appellant's fatherhood. **Id.** The appellant

_____

[1] An order directing or denying genetic testing to determine paternity is immediately appealable. **Barr v. Bartolo**, 927 A.2d 635, 638-39 (Pa. Super. 2007).

- 3 -

alleged that appellee mother allowed him frequent visits with the child and occasionally left her in the appellant's care. *Id.* The appellees argued the presumption of paternity barred the appellant's paternity challenge. The Supreme Court wrote: "The presumption at issue–that a child born to a married woman is the child of the woman's husband–has been one of the strongest presumptions known to the law." *Id.* at 1054. "Traditionally, the presumption can be rebutted only by proof either that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception." *Id.*

> Thus, it has been held that, where the presumption applies, blood test results (existing or potential) are irrelevant unless and until the presumption has been overcome. **It has also been held that, in one particular situation, no amount of evidence can overcome the presumption: where the family (mother, child, and husband/presumptive father) remains intact at the time that the husband's paternity is challenged**, the presumption is irrebuttable. This is such a case.

*Id.* (emphasis added). "This presumption arose (a) to protect marital integrity and (b) to prevent a child from being labeled a 'bastard' child, a classification that carried both a social and a legal[2] stigma." ***Brinkley v.***

---

[2] At common law, children born out of wedlock could not inherit from their fathers and had no right of support from their fathers. ***Brinkley***, 701 A.2d at 184 n.3. The legal disadvantages to children born out of wedlock have been eliminated by statute. 23 Pa.C.S.A. § 5102 ("All children shall be legitimate irrespective of the marital status of their parents, and, in every case where children are born out of wedlock, they shall enjoy all the rights and privileges as if they had been born during the wedlock of their parents
*(Footnote Continued Next Page)*

*King*, 701 A.2d 176, 184 (Pa. 1997) (plurality) (Newman, J. concurring and dissenting).  "The public policy in support of the presumption of paternity is the concern that marriages which function as family units should not be destroyed by disputes over the parentage of children conceived or born during the marriage."  *Id.* at 180 (Flaherty, C.J., announcing the judgment of the Court).  "Third parties should not be allowed to attack the integrity of a functioning marital unit, and members of that unit should not be allowed to deny their identities as parents."  *Id.*

In *Strauser*, the appellant argued the presumption should not apply because appellees' ongoing marriage was not loving and intimate and existed in "name only."  *Strauser*, 726 A.2d at 1056.  In other words, appellees' conduct evinced the absence of a functioning marital unit.  The Supreme Court rejected that argument:

> While [a]ppellant's assertions may be factual, they are not unique.  To the contrary, they indicate that the marriage of Mother and Husband, like many, has encountered serious difficulties.  It is in precisely this situation, as was suggested in [*John M. v. Paula T.*, 571 A.2d 1380 (Pa. 1990), *cert. denied*, 498 U.S. 850 (1990)] that **the presumption of paternity serves its purpose by allowing husband and wife, despite past mistakes, to strengthen and protect their family.**

*Id.* (emphasis added).

_____

*(Footnote Continued)* ———————————

except as otherwise provided in Title 20 (relating to decedents, estates and fiduciaries).").

*Strauser* plainly controls the outcome of this case. In *Strauser*, as here, the husband and wife remained married **at the time of the paternity challenge**. Even though the mother permitted the putative father to visit and occasionally babysit the child, and even though the putative father argued that the mother's marriage continued in "name only," the *Strauser* Court applied the irrebuttable presumption. Paternity disputes involving children born to married couples always evince a marriage with a troubled past. The irrebuttable presumption of paternity exists precisely to protect married couples from legal intrusion by a third party while the marital reconciliation is ongoing. That is, the presumption exists to protect married couples such as M.C. and D.T. from third-party paternity challenges while they work to rebuild their marriage. The *Strauser* Court's analysis leaves no room for a trial court to disregard the presumption based on the court's assessment of the egregiousness of the couple's infidelities prior to the time of the paternity challenge. That is precisely what the trial court did in this case.

To facilitate the trial court's action, the Majority would clothe the trial court with effectively unreviewable discretion to find that no intact marriage exists. Despite uncontradicted evidence that M.C. and D.T. remain married and living together, the Majority allows the trial court to simply find the married couple not credible and their reconciliation a sham. Under the Majority's view, an appellate court must then rubber stamp the trial court's

credibility determinations in light of the couple's infidelities that pre-date their reconciliation and the paternity challenge to find that the irrebuttable presumption of paternity no longer applies. Under this regime the centuries-old policy of protecting married couples from the intrusion of third-party paternity challenges exists only at the whim of the trial court judge. Far from standing as one of the strongest presumptions known to the law, the irrebuttable presumption of paternity applies if and only if the trial court deems it appropriate.

The law does not support this result. The presumption of paternity is a substantive presumption, and as such J.J. bore the burden of proving its inapplicability. ***C.W. v. L.V. and G.V.***, 788 A.2d 1002, 1006 (Pa. Super. 2001); ***Scott v. Mershon***, 576 A.2d 67, 69-70 (Pa. Super. 1990). J.J. came forward with **no** positive evidence to refute the facts that M.C. and D.T. remained married at the time of P.T.'s birth and were living together and raising P.T. as a child of the marriage **as of the time of J.J.'s challenge**. Those facts are uncontradicted and they are fatal to J.J.'s paternity challenge. ***Strauser***. In the absence of any evidence by the moving party, the trial court had no basis upon which to question the marriage between M.C. and D.T. Stated otherwise, the trial court's doubts about M.C. and D.T.'s credibility and sincerity were irrelevant to the applicability of the irrebuttable presumption in this case because the party with the burden of

proof offered no evidence to challenge the marriage as of the time of his paternity challenge.

Many cases in addition to **Strauser** support my conclusion. In **E.W. v. T.S. and C.S.**, 916 A.2d 1197 (Pa. Super. 2007), the putative father sought custody of a child born during the marriage of husband and mother. Mother had an affair with putative father during her marriage to husband, and she was sexually active with both men throughout the time of conception. **Id.** at 1199-1200. Mother told both putative father and husband the child was his. **Id.** at 1200. Husband was present at the birth and baptism and assumed all parental duties. **Id.** Mother and husband never filed for divorce and intended to continue their marriage. **Id.** This Court affirmed the order dismissing putative father's custody complaint because he could not overcome the presumption. **Id.** at 1206. Citing **Strauser**, this Court reasoned: "[T]he **Strauser** Court recognized that in a situation where a marriage into which a child is born continues and, despite marital problems, the mother and her husband never separated and 'have chosen to preserve their marriage and to raise as a family the . . . children born to them. . .' the presumption continues to apply." **Id.** at 1201 (internal citation omitted).

Similarly, the same result was reached in **C.W.** where the mother and husband never separated, were sexually active during the time of conception, the child was born during their marriage, husband was present

at the child's birth, husband was named father on the birth certificate, and husband assumed parental responsibilities. **C.W.**, 788 A.2d at 1006.

In **John M.**, the putative father had an affair with mother while she was engaged to be married and the affair continued sporadically during the marriage. 571 A.2d at 1381. Putative father challenged paternity of the couple's second child. **Id.** The child was born into the marriage and the couple remained married at the time of the challenge. **Id.** Blood tests indicated a 97.47 percent probability that putative father fathered the second child. **Id.** at 1382. Putative father sought custody and visitation, and he sought to compel the husband to submit to blood testing. **Id.** The trial court denied relief, but the Superior Court panel reversed. This Court reasoned that the Uniform Act on Blood Tests To Determine Paternity, currently codified at 23 Pa.C.S.A. § 5104, relaxed the presumption of paternity and tipped the scales in favor of permitting putative father to compel blood testing of the husband. **Id.** at 1384. This Court also concluded the putative father had procedural and substantive due process rights to establish his paternity. **Id.**

The Supreme Court reversed, concluding that the Uniform Act on Blood Tests did not permit a third party standing outside the marriage to compel a married man to submit to blood tests. **Id.** at 1385.

> The Superior Court over-emphasized the rights and interests of the alleged father and minimized the rights and interests of others involved in and affected by its decision, namely the mother, her husband, the family unit and the

Commonwealth. When we factor in those rights and interests, we find that the scales weigh heavily in this case in favor of appellants and against court-ordered blood tests.

[...]

There is, in short, a family involved here. A woman and a man who have married and lived together as husband and wife, giving birth to and raising four children, have obvious interests in protecting their family from the unwanted intrusions of outsiders (even ones who have had serious relationships with the mother, father or children). The Commonwealth recognizes and seeks to protect this basic and foundational unit of society [. . .] by the presumption that a child born to a woman while she is married is a child of the marriage.

*Id.* at 1385-86.

Chief Justice Nix added the following in a concurring statement joined by a majority of the Justices: "[A] third party who stands outside the marital relationship should not be allowed, for any purpose, to challenge the husband's claim of parentage. **I believe the presumption in this situation is irrebuttable and conclusive**." *Id.* at 1389 (Nix, C.J., concurring) (emphasis added).

In *Coco v. Vandergrift*, 611 A.2d 299 (Pa. Super. 1992), as in *John M.*, a third party challenged paternity of a child born to a married couple. The third party alleged he had a meaningful relationship with the child and that the married couple "facilitated partial custody and visitation." *Id.* at 300. Citing the lead opinion and Chief Justice Nix's concurring opinion in *John M.*, this Court wrote: [The Supreme Court] expressed a belief that the presumption should be irrebuttable in all cases in which the mother, child

and husband lived together as a family with the husband assuming parental responsibility, including those in which an outside party claims non-access or impotency of the husband." *Id.* at 301. Thus, the *Coco* Court concluded the third party could not prevail because the presumption of paternity applied and was irrebuttable. *Id. See also Donnelly v. Lindenmuth*, 597 A.2d 1234, 1236 (Pa. Super. 1991) (presumption of paternity is irrebuttable where the married couple remains married at the time of the paternity challenge).

The Majority relies heavily on *Vargo v. Schwartz*, 940 A.2d 459, 461 (Pa. Super. 2007), in which four children were born to a married couple, and the mother filed suit against the putative father for support of the two girls born to the marriage. The *Vargo* Court acknowledged that the married couple remained married at the time of the paternity challenge. *Id.* Consensual genetic testing confirmed that putative father, not the husband, fathered the two girls. *Id.* Putative father argued that, in the eyes of the law, the husband was the father of the two girls based on the presumption of paternity. *Id.* Putative father also argued that the mother was estopped[3]

---

[3] Paternity by estoppel may apply if the presumption of paternity is inapplicable or has been rebutted. *Id.* at 464. Given the circumstances of the case on appeal, this Court has no occasion to analyze paternity by estoppel.

from seeking support from him because she and her husband held the girls out as their own. *Id.*

Citing *Brinkley*, the *Vargo* court noted that "the presumption of paternity applies *only* where the underlying policy to preserve marriages would be advanced by application of the presumption." *Id.* at 463 (emphasis in original; citing *Brinkley*, 701 A.2d at 181). The *Vargo* Court recognized that the "presumption of paternity is unrebuttable when, at the time the husband's paternity is challenged, mother, her husband, and the child comprise an intact family wherein the husband has assumed parental responsibilities for the child." *Id.* at 463. The *Vargo* Court also recognized that, where the marriage is no longer intact at the time of the challenge, the presumption can be overcome only by clear and convincing evidence of the husband's lack of access to the wife or sterility at the time of conception. *Id.*

The *Vargo* Court wrote:

> In considering whether the presumption of paternity was applicable in the instant case, the trial court determined that Mother and Mr. Vargo did not have an intact marital relationship and there was no marriage to preserve. The trial court therefore concluded that applying the presumption of paternity was not warranted, since to do so would not advance the policy underlying the presumption, *i.e.,* preservation of a marriage. There is evidence of record, summarized by the trial court in the following paragraph, to support the trial court's determination that 'the record established a broken marriage and family that were not magically restored by [Mr.] Vargo's periodic visits or episodic sex between the parties.'

Mother testified that she and Mr. Vargo had separated numerous times during their marriage. The most recent separation, which began in October 2003, was prompted by Mother's revelations to Mr. Vargo that he was not the father of the two young girls at the center of the instant dispute. (Notes of Testimony ("N.T."), 9/24/04, at 9, 11). Although Mother testified that Mr. Vargo had lived with her and her children 'on and off' since the October 2003 separation, Mr. Vargo testified that he resided with Mother only when he had nowhere else to stay. Mother further testified that efforts to reconcile with Mr. Vargo had failed. Mother had filed for divorce (although no action had been taken on that filing as of the time of the support hearing), and Mr. Vargo in his testimony spoke of a time 'when we get divorced.'

Whether the family is intact and there is a marriage to preserve are questions of fact, which, like all questions of fact, fall squarely within the realm of the fact-finder. The evidence summarized above supports the trial court's findings of fact as to the status of the family and the marriage at issue. Furthermore, the trial court correctly summarized the law regarding the presumption of paternity and applied it to these facts. Accordingly, we will not disturb the trial court's decision, and we conclude that Appellant's first contention—that the trial court abused its discretion in failing to apply the presumption of paternity—has no merit.

*Id.* at 466-67 (citations omitted). The ***Vargo*** Court thus concluded the presumption of paternity did not apply, and ignored the difference between the irrebuttable and rebuttable presumption.[4]

_____

[4] The Supreme Court opinions in ***Strauser*** provides for an irrebuttable presumption where the child is born to an intact marriage that remains intact at the time of the paternity challenge and a rebuttable presumption where the child is born to an intact marriage that is no longer intact at the time of the paternity challenge. ***Strauser***, 762 A.2d at 1054. ***See also Brinkley***, 701 A.2d at 181. The ***Vargo*** Court did not analyze the applicability of the rebuttable presumption. Likewise, in ***Fish v. Behers***, 741 A.2d 721 (Pa. 1999), the Supreme Court found the presumption

*(Footnote Continued Next Page)*

The facts of *Vargo* are plainly distinguishable from those presently at issue. The husband and mother, while still legally married, no longer lived together at the time of the paternity challenge and the mother had filed for divorce. Indeed, the mother testified that efforts at reconciliation failed and both mother and husband testified about the couple's pending divorce. The record in *Vargo* therefore contained facts from which the mother could prove the absence of an intact marriage. Such facts are absent here.

I next consider *B.S. v. T.M.*, 782 A.2d 1031 (Pa. Super. 2001), where the trial court refused to apply the presumption to a couple who remained married at the time of the paternity challenge. There, the mother separated from her husband briefly after she became pregnant with putative father's child and remained separated from him, living with her parents, until after the child's birth in May 1999. *Id.* at 1032-33. Putative father was present at the birth, named as the father on the child's birth certificate, participated in the child's baptism as his father, and purchased a life insurance policy to provide for the child in the event of the putative father's death. *Id.* at 1033. Putative father and mother voluntarily underwent paternity testing and were aware of the results. *Id.* at 1032. Mother filed a complaint in divorce in February of 1999, but withdrew it on September 13, 1999. *Id.* at 1033.

*(Footnote Continued)* ───────────────

inapplicable where the child was born to an intact marriage that was no longer intact at the time of the paternity challenge. Instantly, I believe the irrebuttable presumption applies and therefore I have no occasion to address the proper application of the rebuttable presumption.

In June of 1999, mother abruptly ended her romantic relationship with putative father. Her posts on an Internet board indicated she was considering reconciling with her estranged husband and moving in with him in order to improve her legal position with respect to the child born of her relationship with putative father. *Id.* at 1034. Putative father sought to preserve his rights by filing a petition for special relief on September 9, 1999 and a complaint for partial custody on September 21, 1999.

In ruling the presumption inapplicable, this Court reasoned: "Here, [mother] and [husband] separated from the time of [child's] conception until well after birth, a period of approximately one year." *Id.* at 1036. "During that time, [mother] acted as if the separation would be permanent and she would be with [putative father] indefinitely." *Id.* "Additionally, [putative father] undertook the role of father." *Id.* The *B.S.* Court considered the facts before it to fall somewhere in between *Strauser*, where the marriage remained intact at all times, and *Brinkley*, where the marriage had ended before any party asserted the presumption of paternity. *Id.* "Here, after living apart for one year, [mother and husband] reconciled and then sought to apply the presumption in order to defeat [putative father's] paternity claim." *Id.* Essentially, mother and husband "voluntarily gave up the benefit of the presumption for approximately one year after which they claimed the benefits of its existence for the first time." *Id.* at 1037.

Cognizant of the **Brinkley** Court's reasoning that the presumption does not apply where its purpose–to protect a marriage–cannot be fulfilled, the **B.S.** court determined that the presumption did not apply. No dispute existed as to the child's parentage, and the court did not believe putative father's custody petition would do further harm, "as this hellish marital situation has already occurred." **Id.** at 1036-37. Thus, the Court reasoned the "marriage will succeed or perhaps will fail with or without the application of the presumption." **Id.** at 1037. Finally, the **B.S.** Court reasoned "application of the presumption could have a deleterious effect on [mother and husband's] family, especially on [child], in the future." **Id.** at 1037.

**B.S.**, like **Vargo**, is plainly distinguishable from the instant case. Putative father and mother lived together as a family unit for one month after the child's birth. After that, mother, by her own admission, moved in with her husband only to improve her prospects in the pending legal battle with the putative father. Thus, the record in **B.S.** contained facts from which the putative father could carry his burden of proving the absence of an intact marriage at the time of the paternity challenge.[5]

The Majority cites **Vargo** for the proposition that the existence of an intact marriage is a question of fact for the trial court. If a dispute exists as

---

[5] To the extent some of the legal analysis in **B.S.** is in tension with the Supreme Court's analysis in **Strauser**, I believe this *en banc* panel should disapprove it.

to whether the married couple remains living together and raising the child together, I agree. Here, in contrast, where the uncontested facts indicate that M.C. and D.T. remain married, living together, and raising the child as a child of the marriage, I believe the trial court committed an egregious error of law in refusing to apply the irrebuttable presumption of paternity.[6] The trial court's credibility determinations are not evidence upon which J.J., as challenger, can bear his burden of proving the absence of an intact marriage. Where, at the time of the paternity challenge, a couple remains married, living together despite past difficulties, and raising the child in question as a child of the marriage, the presumption of paternity applies and is irrebuttable. *John M.*; *Strauser*; *Coco*; *Donnelly*.

I recognize that the continued vitality of the presumption of paternity has been controversial for some time. Further analysis of *Strauser* and *Brinkley* illustrates the point. In *Brinkley*, the mother was married while the child was conceived, but her husband moved out before the child was born. *Brinkley*, 701 A.2d at 177. Mother was having sexual relations with putative father but not with her husband during the time of conception. *Id.* The husband filed for divorce when he learned mother was pregnant. *Id.* at 177-78. Putative father was present at the child's birth and saw her weekly for the first two years of her life. *Id.* at 178. Putative father placed the

_____

[6] It is worth noting that M.C. and D.T. continue to pursue this joint appeal.

child on his health insurance and paid some support, but mother eventually filed a complaint alleging the support was insufficient. *Id.*

Putative father argued mother could not pursue a child support action against him because she failed to rebut the presumption that her former husband fathered the child. *Id.* The Supreme Court plurality disagreed:

> In the case at bar, **at the time of the complaint for support**, there was no marriage. Lisa and George Brinkley had separated before the birth of the child and were divorced **at the time of the complaint**. The presumption of paternity, therefore, has no application to this case, for the purpose of the presumption, to protect the institution of marriage, cannot be fulfilled.

*Id.* at 181 (emphasis added). The ***Brinkley*** court agreed unanimously that the presumption did not apply. No rationale garnered a majority.

Justice Newman authored a concurring and dissenting opinion in ***Brinkley*** and a dissent in ***Strauser***. She wrote: "The Majority posits that in this case, where the marriage is intact, 'public policy' requires that the presumption be irrebuttable. I disagree." ***Strauser***, 726 A.2d at 1057 (Newman, J. dissenting). She argued the presumption "should be open to rebuttal by reliable blood test evidence." *Id.*[7]

---

[7] In my view, blood test evidence is irrelevant under the traditional rationale for the presumption. As explained in the main text, the presumption was created to protect marriages and to protect children from the ramifications of illegitimacy. While the legal consequences of illegitimacy have been removed by statute, the goal of protecting an intact marriage remains the policy of this State, as per the Majority opinion in ***Strauser***. Admission of blood test evidence does not advance that goal. This debate has been
*(Footnote Continued Next Page)*

Justice Newman argued the majority's irrebuttable presumption contradicted the Uniform Act on Blood Tests to Determine Paternity, 23 Pa.C.S.A. § 5104(c). That statute provides, in relevant part, as follows:

> (c) Authority for test. --In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

23 Pa.C.S.A. § 5104(c). Justice Newman believed, therefore, that the **Strauser** majority's public policy pronouncement contradicted that of the legislature, as set forth in § 5104(c). She argued the Supreme Court was not the appropriate body to make such public policy pronouncements, especially in light of advances in scientific evidence. "We would be both naïve and remiss to perpetuate the strength of this presumption and ignore the results of reliable scientific tests." **Strauser**, 726 A.2d at 1058 (Newman, J. dissenting).

Concerning the goal of protecting an intact marriage, Justice Newman, however, advanced the following argument in **Brinkley**:

*(Footnote Continued)* ―――――――――――

ongoing at least since the 1950's. **See Commonwealth ex rel. O'Brien v. O'Brien**, 136 A.2d 451, 453-54 (Pa. 1957) (noting the admissibility into evidence of blood grouping tests in certain cases, though not those where the presumption applies).

The goal of protecting marital integrity is also futile in a society where legal marital status does not always translate into a loving, intimate, monogamous relationship. The presumption that a child born to a married woman is a child of the marriage is dubious at best and in many cases, such as here, is absurd. We are living a fable, both morally and legally, if we think that a family is typified by 'Father Knows Best,' where parents and children love and respect each other and where husband and wife are faithful to each other and adultery is merely a figment of one's imagination. Thus, the presumption that a child born during coverture is a child of the marriage has lost its place in modern society, especially considering the scientific testing available both to prove and to disprove paternity.

**Brinkley**, 701 A.2d at 185 (footnote omitted). Justice Newman's argument has yet to garner the support of a majority of the Supreme Court. As an intermediate court of appeals, we must faithfully apply binding Supreme Court precedent.

In summary, the record evinces M.C. and D.T.'s reconciliation and that they remain living together and raising P.T. as a child of their marriage. In this regard, the facts align themselves with **Strauser** and **E.W.** Despite M.C.'s lack of fidelity to the marriage, M.C. and D.T. were still married and living together at the time of P.T.'s birth and J.J.'s paternity challenge. As noted above, **Strauser** indicates that the inquiry into an intact marriage must take place as of the time of the paternity challenge. **Strauser**, 726 A.2d at 1054. **Vargo** reiterated that proposition. **Vargo**, 940 A.2d at 463. Following **Strauser**, this Court in **E.W.** applied the presumption of paternity where the married couple chose to reconcile despite the marriage's troubled past.

- 20 -

In summary, *Strauser* and its progeny bar J.J.'s paternity challenge. The *Strauser* Court recognized that parties to a seemingly ruined marriage sometimes resolve their differences and remain together. The *Strauser* Court expressly rejected putative father's argument that the marriage existed in name only, despite the married couple's troubled past. *Strauser*, 726 A.2d at 1056.

The presumption of paternity is never an issue absent marital infidelities or allegations thereof. In any such case, the trial court might find the mother not credible based on past conduct. In no case will there be any guarantee of a lasting marriage. Perhaps M.C.'s conduct impresses this Court as especially egregious. If so, this is a case in which difficult facts have created bad law. The irrebuttable presumption of paternity is meaningless if trial judges have discretion to apply it—or not—based solely on perceived authenticity of a marital reconciliation. The Majority's analysis creates an open invitation to third party attacks on intact but troubled marriages. That is precisely what the presumption prohibits.

Perhaps the time has come to dispense with the presumption entirely, or to reassess the circumstances under which it is applicable and/or rebuttable. If so, such action must come from our Supreme Court or the General Assembly. I would note however in passing, that a strong argument may be made to preserve the presumption of paternity for those who choose to marry or remain married, and that the values embodied in the

presumption are not necessarily outdated. In **Obergefell v. Hodges**, 135 S.Ct. 1039 (2015), the United States Supreme Court recently reaffirmed this in the context of confirming that same-sex couples have the right to marry. The Supreme Court stated: "[T]his Court's cases and the Nation's traditions make clear that marriage is a keystone of our social order." *Id.* at 2590. Further:

> In **Maynard v. Hill**, 125 U.S. 190, 121 (1888), the Court echoed de Tocqueville, explaining that marriage is 'the foundation of the family and of society, without which there would be neither civilization nor progress.' Marriage, the **Maynard** Court said, has long been 'a great public institution, giving character to our whole civil polity.' *Id.,* at 213. This idea has been reiterated even as the institution has evolved in substantial ways over time, superseding rules related to parental consent, gender, and race once thought by many to be essential.

*Id.* at 2601.

> No union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family.

*Id.* at 2608.

Accordingly, I respectfully dissent and would vacate the order on appeal.